1 | Jonathan E. Nuechterlein
2 | General Counsel

3 | Eric D. Edmondson, D.C. Bar No. 450294
Erika Wodinsky, Cal. Bar No. 091700
4 | Jacob A. Snow, Cal. Bar No. 270988
901 Market Street, Suite 570, San Francisco, CA  94103
5 | (415) 848-5100/(415) 848-5184 (fax)
*eedmondson@ftc.gov*; *ewodinsky@ftc.gov; jsnow@ftc.gov*
6 |

7 | Raymond E. McKown, Cal. Bar No. 150975
Stacy Procter, Cal. Bar No. 221078
8 | 10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024
(310) 824-4343/(310) 824-4380 (fax)
9 | *rmckown@ftc.gov*; *sprocter@ftc.gov*

10 |

11 | Attorneys for Plaintiff
Federal Trade Commission

12 |

13 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
14 | **SAN FRANCISCO DIVISION**

15 | **FEDERAL TRADE COMMISSION**,          Case No.
                    Plaintiff,
16 |

17 |        v.                                **COMPLAINT FOR PERMANENT**
                                            **INJUNCTION AND OTHER**
18 | **DIRECTV,**                             **EQUITABLE RELIEF**
            a corporation,
19 | and

20 | **DIRECTV, LLC,**
            a limited liability company,
21 |

22 |                    Defendants.

23 |

24 |        Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint

25 | alleges:

26 |        1.        The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

27 | Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 5 of the Restore Online

28 | Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, to obtain permanent injunctive relief,

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF          1

1   rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-

2   gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section

3   5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of Section 4 of ROSCA, 15 U.S.C. §

4   8403, in connection with the advertising, marketing, and sale of Defendants' multi-channel video

5   programming subscription service.

6                    ***JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT***

7       2.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

8   and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, and 8404.

9       3.       Venue is proper in this district under 28 U.S.C. § 1391(b), (c)(2), and (d), and 15

10  U.S.C. § 53(b).

11      4.       Assignment to the San Francisco Division is proper because Defendants have

12  advertised and sold direct-to-home digital television service in San Francisco County to

13  thousands of consumers who reside in the county.

14                                      ***PLAINTIFF***

15      5.       The FTC is an independent agency of the United States Government created by

16  statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

17  which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also

18  enforces ROSCA, 15 U.S.C. §§ 8401 *et seq.*, which prohibits certain methods of negative option

19  marketing on the Internet.

20      6.       The FTC is authorized to initiate federal district court proceedings, by its own

21  attorneys, to enjoin violations of the FTC Act and ROSCA, and to secure such equitable relief as

22  may be appropriate in each case, including rescission or reformation of contracts, restitution, the

23  refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b),

24  56(a)(2)(A), 56(a)(2)(B), 57b, and 8404.

25                                     ***DEFENDANTS***

26      7.       DIRECTV, LLC is a California limited liability company with its principal place

27  of business at 2260 East Imperial Highway, El Segundo, California 90245.  At all times material

28  to this Complaint, acting alone or in concert with others, DIRECTV, LLC has advertised,

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF                     2

1    marketed, distributed, or sold direct-to-home digital television service to consumers throughout

2    the United States.  DIRECTV, LLC is owned directly or indirectly by DIRECTV.  DIRECTV,

3    LLC transacts or has transacted business in this district and throughout the United States.

4         8.        DIRECTV is a Delaware corporation with its principal place of business at 2260

5    East Imperial Highway, El Segundo, California 90245.  At all times material to this Complaint,

6    acting alone, in concert with others, or through its subsidiaries, DIRECTV has advertised,

7    marketed, distributed, or sold direct-to-home digital television services to consumers throughout

8    the United States.  Acting alone, in concert with others, or through its subsidiaries, DIRECTV

9    transacts or has transacted business in this district and throughout the United States.

## COMMERCE

11        9.        At all times material to this Complaint, Defendants have maintained a substantial

12   course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

13   15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### Introduction

16        10.       Defendants are the largest provider of direct-to-home digital television service

17   and the second largest provider in the multi-channel video programming distribution industry in

18   the United States.  As of December 31, 2013, Defendants had approximately 20.3 million

19   subscribers in the United States.

### Defendants' Subscription Service

21        11.       Defendants offer their direct-to-home digital television service to consumers by

22   subscription.  Defendants' subscription service consists of a programming package, a satellite

23   dish and other necessary equipment, and installation and support services.

24        12.       Defendants typically require consumers to agree to a mandatory 24-month

25   contract to receive programming.  Defendants typically assess an "early cancellation fee" against

26   customers who cancel their subscription before the end of 24 months.  Defendants' early

27   cancellation fee is typically $20 per month for each month remaining on a subscriber's

28   agreement.  After 24 months, Defendants' customers may become month-to-month subscribers.

1

*Defendants' Marketing Practices*

2        13.      Defendants typically market their subscription service by disseminating

3 advertisements with reduced rates for their programming packages.  The advertisements appear

4 in a variety of media, including television, print, mail, and the Internet.  The rates are typically a

5 set monthly charge for the first year of a two-year customer agreement ("initial period").  In the

6 second year of the agreement, Defendants substantially increase the monthly charges of their

7 programming packages.  This increase in the monthly charge is typically as much as 50 to 70

8 percent.  Also, Defendants typically impose an additional $3 to $5 per month increase in the cost

9 of the programming packages in the second year of the agreement.

10       14.      In addition to the rates referenced in Paragraph 13, Defendants advertise that

11 subscribers will receive additional premium channels, such as HBO, Cinemax and Showtime,

12 free of charge for a limited period of time, *e.g.*, three months.  Consumers must affirmatively

13 cancel these premium channels before the end of the initial period to avoid monthly charges.

14 Defendants charge substantial monthly fees, typically around $48 per month, to consumers who

15 take no action or otherwise remain silent.  Defendants charge consumers for the premium

16 channels without obtaining express informed consent.

17       15.      Defendants' marketing practices have been the focus of tens of thousands of

18 consumer complaints and of actions by the attorneys general of all 50 states and the District of

19 Columbia.

20

*Defendants' Deceptive Advertising Campaigns*

21       16.      In numerous instances since 2007, Defendants have disseminated or have caused

22 to be disseminated advertisements for Defendants' subscription service, including but not limited

23 to the attached Exhibits 1 through 3.  These advertisements direct potential customers to

24 Defendants' telephone numbers and Internet website, *www.directv.com*.  These advertisements

25 contain the following statements regarding pricing for their subscription service:

26          A.    "All New!  Limited Time Offer! . . . Now only $19.99*/mo."  (Exhibit 1)

27              (October 2014).

28

1          B.      "Package offers starting at $24.99/mo.  Limited Time." (Exhibit 2)

2                  (August 2013).

3          C.      "Limited Time!  $24.99/mo for 12 months." (Exhibit 3) (July 2013).

4      17.      To the extent that Defendants' advertisements described in Paragraph 16, above,

5   contain any qualifying disclosures concerning the price consumers will pay after the initial

6   period, any such disclosures are inadequate in terms of their content, presentation, proximity,

7   prominence or placement such that consumers are unlikely to see or understand such disclosures.

8   Similarly, to the extent that these advertisements contain any qualifying disclosures concerning

9   the mandatory two-year contract length, any such disclosures are inadequate in terms of their

10  content, presentation, proximity, prominence or placement such that consumers are unlikely to

11  see or understand such disclosures.

12     18.      Some of Defendants' advertisements described in Paragraph 16, above, also

13  contain statements that subscribers will receive premium channels free of charge for three

14  months.  For example, Exhibit 1 states "over 30 premium channels free for 3 months."

15     19.      To the extent that Defendants' advertisements described in Paragraph 16, above,

16  contain any qualifying disclosures concerning the offer of free premium channels, any such

17  disclosures are inadequate in terms of their content, presentation,  proximity, prominence or

18  placement such that consumers are unlikely to see or understand such disclosures.  In particular,

19  these advertisements do not convey to consumers:

20         A.      That Defendants automatically enroll consumers in a negative option

21                 continuity plan with additional charges;

22         B.      That consumers must affirmatively cancel the negative option continuity

23                 plan before the end of a trial period to avoid additional charges;

24         C.      That Defendants use consumers' credit or debit card information to charge

25                 consumers monthly for the negative option continuity plan; and

26         D.      The costs associated with the negative option continuity plan.

27

28

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF                    5

1

*Defendants' Deceptive Internet Sales Website*

2    20.    Consumers who visit Defendants' website, *www.directv.com*, are required to

3  navigate sequentially through at least eight webpages in order to select a programming package

4  and purchase Defendants' subscription service.  These webpages include:  (a) the Landing page,

5  (b) the Programming Package Selection page, (c) the Receiver page, (d) the Shopping Cart

6  pages, and (e) the Confirmation page.

7    21.    In numerous instances since 2007, Defendants have disseminated or have caused

8  to be disseminated webpages, including but not necessarily limited to those attached as Exhibit 4

9  (August 2013).  These webpages typically contain statements that are identical or similar to the

10  following:

11    A.    "Limited Time.  140+ channels.  $24.99 month for 12 months" (Exhibit 4

12        at page 1); and

13    B.    "CHOICE:  150+ channels.  Only $29.99 month for 12 months" (Exhibit 4

14        at page 2).

15    22.    To the extent that Defendants' webpages contain any qualifying disclosures

16  concerning the price consumers will pay after the "discount" period, any such disclosures are

17  inadequate in terms of their content, presentation, proximity, prominence, or placement such that

18  consumers are unlikely to see or understand such disclosures.  In particular, Defendants'

19  webpages do not convey that:

20    A.    Defendants require consumers to remain a subscriber for two years, a

21        mandatory term which carries an early cancellation fee for the failure to do

22        so; and

23    B.    Defendants charge significantly higher monthly prices for their

24        programming packages during the second year of service.

25    23.    Defendants' webpages typically contain statements concerning an offer of free

26  premium channels that are identical or similar to the following:  "Free for 3 months.  HBO +

27  Starz + Showtime + Cinemax."  (Exhibit 4 at page 1).

28

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF          6

1      24.     To the extent that Defendants' webpages contain any qualifying disclosures

2   concerning the offer of free premium channels, any such disclosures are inadequate in terms of

3   their content, presentation, proximity, prominence, or placement such that consumers are

4   unlikely to see or understand such disclosures.  In particular, Defendants' webpages do not

5   convey to consumers:

6               A.     That Defendants automatically enroll consumers in a negative option

7                      continuity plan under which Defendants charge consumers for access to

8                      premium channels after an initial free period, typically three months,

9                      unless consumers contact Defendants and cancel their access to the

10                     premium channels;

11              B.     That consumers must affirmatively cancel the negative option continuity

12                     plan before the end of the initial free period to avoid charges;

13              C.     That Defendants use consumers' credit or debit card information to charge

14                     consumers  for the negative option continuity plan; and

15              D.     The costs associated with the negative option continuity plan.

16                          *Defendants' Deceptive Telemarketing Presentation*

17      25.     Consumers who call the telephone number listed in Defendants' advertisements

18   described in Paragraph 16, above, speak with a telemarketer.  Defendants' telephonic sales

19   presentations typically include statements concerning the initial monthly prices that consumers

20   will pay for programming packages.  Defendants' telephonic presentations do not adequately

21   disclose the monthly cost to consumers of the programming packages during in the second year

22   of their subscription agreements.

23                               ***VIOLATIONS OF THE FTC ACT***

24      26.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

25   or practices in or affecting commerce."

26      27.     Misrepresentations or deceptive omissions of material fact constitute deceptive

27   acts or practices prohibited by Section 5(a) of the FTC Act.

28

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF                    7

### *COUNT I*

*Failure to Disclose or Disclose Adequately Pricing of*

*Defendants' Satellite Television Subscription Service*

28.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, and sale of Defendants' subscription service, Defendants have represented, directly or indirectly, expressly or by implication, that their programming packages can be purchased by paying the advertised monthly prices, typically for a twelve-month period.

29.     In numerous instances in which Defendants have made the representation set forth in Paragraph 28 of this Complaint, Defendants have failed to disclose, or to disclose adequately, to consumers certain material terms and conditions of the offer, including but not limited to:

        A.     The mandatory two-year agreement period, which carries an early cancellation fee, for the subscription service; and

        B.     The significantly higher price for programming packages, typically $25 to $45 per month higher, during the mandatory second year of the consumer's agreement.

This additional information would be material to consumers in deciding to purchase Defendants' subscription services.

30.     Defendants' failure to disclose or disclose adequately the material information described in Paragraph 29, above, in light of the representation described in Paragraph 28 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### *COUNT II*

*Failure to Disclose or Disclose Adequately Premium Channel Offer Terms*

31.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, and sale of Defendants' subscription service, Defendant have represented, directly or indirectly, expressly or by implication, that consumers could obtain certain premium channels for free for a certain period of time, typically three months.

32.     In numerous instances in which Defendants have made the representation set forth in Paragraph 31 of this Complaint, Defendants have failed to disclose, or disclose adequately, to consumers the material terms and conditions related to the costs of the offer, including:

        A.     That Defendants automatically enroll consumers in a negative option continuity plan with significant charges;

        B.     That consumers must affirmatively cancel the negative option continuity plan before the end of the trial period to avoid charges;

        C.     That Defendants use consumers' credit or debit card information to charge consumers for the negative option continuity plan; and

        D.     The costs associated with the negative option continuity plan.

33.     Defendants' failure to disclose or to disclose adequately the material information described in Paragraph 32 above, in light of the representation described in Paragraph 31 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### *VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT*

34.     In 2010, Congress passed ROSCA, 15 U.S.C. §§ 8401 *et seq.*, which became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce.  To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

35.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(u), unless the seller (1) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information, (2) obtains the consumer's

1  express informed consent before making the charge, and (3) provides a simple mechanism to

2  stop recurring charges.  15 U.S.C. § 8403(1)–(3).

3      36.     The TSR defines a negative option feature as:  "an offer or agreement to sell or

4  provide any goods or services, a provision under which the consumer's silence or failure to take

5  an affirmative action to reject goods or services or to cancel the agreement is interpreted by the

6  seller as acceptance of the offer."  16 C.F.R. § 310.2(u).

7      37.     As described in Paragraphs 23-24, above, Defendants have advertised and sold

8  access to premium channels, as part of their subscription service, to consumers through a

9  negative option feature as defined by the TSR.  *See* 16 C.F.R. § 310.2(u).

10      38.     Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is

11  treated as a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

### *COUNT III*

#### *Failure to Disclose All Material Terms*

14      39.     In numerous instances, Defendants have charged or attempted to charge

15  consumers for access to premium channels, as part of its subscription service, through a negative

16  option feature while failing to clearly and conspicuously disclose all material terms of the

17  transaction before obtaining consumers' billing information.

18      40.     Defendants' acts or practices, as described in Paragraph 39 above, constitute a

19  violation of Section 4(1) of ROSCA, 15 U.S.C. § 8403(1), and are therefore treated as a violation

20  of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

### *COUNT IV*

#### *Failure to Obtain Consumers' Express Informed Consent*

23      41.     In numerous instances, Defendants have charged or attempted to charge

24  consumers for access to premium channels, as part of their subscription service, through a

25  negative option feature while failing to obtain consumers' express informed consent before

26  charging their credit card, debit card, bank account, or other financial account for those premium

27  channels.

28

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF         10

42.     Defendants' acts or practices, as described in Paragraph 41 above, constitute a violation of Section 4(2) of ROSCA, 15 U.S.C. § 8403(2), and are therefore treated as a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

### *PRAYER FOR RELIEF*

Wherefore, Plaintiff FTC, pursuant to Section 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b, Section 5 of ROSCA, 15 U.S.C. § 8404, and the Court's own equitable powers, requests that the Court:

A.     Enter a permanent injunction to prevent further violations of the FTC Act and ROSCA by Defendants;

B.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and ROSCA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

C.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,


Jonathan E. Nuechterlein
General Counsel


Dated:  March 11, 2015           */s/ Eric D. Edmonson*
Eric D. Edmondson
Raymond E. McKown
Erika Wodinsky
Stacy Procter
Jacob A. Snow

Attorneys for Plaintiff
Federal Trade Commission

COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF                    11