**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

```
FEDERAL TRADE COMMISSION,      )
                               )
          Plaintiff,           )
                               )
   VS.                         )    NO. C 15-01129 HSG
                               )
DIRECTV, INC., AND DIRECTV     )
LLC,                           )
                               )
          Defendants.          )
                               )
```

San Francisco, California
Thursday, August 13, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        FEDERAL TRADE COMMISSION
        901 Market Street - Suite 570
        San Francisco, California  94103
  BY:  **JACOB A. SNOW, ATTORNEY AT LAW**
        **ERIC D. EDMONDSON, ATTORNEY AT LAW**
        **ERIKA R. WODINSKY, ATTORNEY AT LAW**

For Defendants:
        SIDLEY AUSTIN LLP
        1999 Avenue of the Stars - 17th Floor
        Los Angeles, California 90067
  BY:  **CHAD S. HUMMEL, ATTORNEY AT LAW**

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

REPORTED BY:   Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

```
 1  APPEARANCES:  (CONTINUED)

 2  For Defendants:
                            SIDLEY AUSTIN LLP
 3                          555 California Street -Suite 2000
                            San Francisco, California  94104
 4                     BY:  RYAN M. SANDROCK, ATTORNEY AT LAW

 5                          MANATT, PHELPS & PHILLIPS LLP
                            695 Town Center Drive - 14th Floor
 6                          Costa Mesa, California  92626
                       BY:  CLAYTON S. FRIEDMAN, ATTORNEY AT LAW
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Thursday - August 13, 2015                         1:02 p.m.
 2                          P R O C E E D I N G S
 3                                ---oOo---
 4        THE CLERK:  We're calling C 15-1129, Federal Trade
 5   Commission versus DIRECTV, Inc., et al.
 6        Please step forward and state your appearances for the
 7   record, please.
 8        MR. SNOW:  Good afternoon.  Jake Snow for the Federal
 9   Trade Commission.
10        THE COURT:  Good afternoon, Mr. Snow.
11        MR. HUMMEL:  Good afternoon, Your Honor.  Chad Hummel
12   on behalf of DIRECTV.  With me is Ryan Sandrock and Clay
13   Friedman.
14        THE COURT:  All right.  Good afternoon, Mr. Hummel.
15        MR. HUMMEL:  Thank you.
16        THE COURT:  All right.  So you're here on the
17   defendants' motion to strike affirmative defenses.
18        I've read the papers carefully and the authorities that
19   the parties have cited and have some targeted questions for
20   you.  And so I think the first is one that I'd like both
21   parties to address; and, simply put, the question boils down to
22   what is the point of this motion and what difference does it
23   make as a practical matter in the case.
24        There's some suggestion that it's an issue of there being
25   additional discovery, but it wasn't clear to me that, given the
```

1  nature of the case, this motion, even if granted, would likely
2  have much effect on the overall scope of the case.
3          **MR. SNOW:**  Thank you, Your Honor.  I can address that
4  first.
5      So we think this is an important motion, and we do believe
6  that the scope of discovery will be expanded if it is not
7  granted.
8      There's a couple of areas where I think that's the case.
9  First, there are depositions and discovery into DIRECTV's
10 contact with all 50 State Attorneys General as a part of
11 negotiations relating to those settlements.  So all of that
12 material I think wouldn't be an issue absent these affirmative
13 defenses.
14         **THE COURT:**  Is there no other way that that could come
15 into the case?
16         **MR. SNOW:**  Well, I'm not aware of one.
17     There's also the concern of motion practice.  There's
18 possible discovery motion practice related to that material.
19 I'm not sure what that would be, but it could happen.
20     But maybe most critically there's summary judgment motion
21 practice.  The Court's standing order limits the parties to a
22 single summary judgment motion, and we would seek summary
23 judgment on all six of these affirmative defenses.  So that
24 would limit the available space for us to be contending with
25 the substance of this case which, of course, are DIRECTV's

1  advertisements.
2      **THE COURT:** What if I were to strike with leave to
3  amend and defendant successfully amends? Then that issue would
4  be obviated. I suppose it's contingent on them being able to
5  do that, but I'm not sure that this motion to strike at this
6  stage will eliminate substantive claims from the case. I'm
7  just not sure.
8      **MR. SNOW:** Okay. Well, so we think that leave to
9  amend is inappropriate for two reasons. First of all, they
10 amended once already. We're all looking at the amended Answer,
11 not the initial Answer.
12    And, second, the facts that are in Mr. Friedman's
13 declaration and the facts that exist do not support any of the
14 contested defenses. So we don't think that leave to amend is
15 appropriate.
16     **THE COURT:** I understand your argument --
17     **MR. SNOW:** Sure.
18     **THE COURT:** -- in that regard.
19     **MR. SNOW:** Sure.
20     **THE COURT:** All right. Mr. Hummel, on this point?
21     **MR. HUMMEL:** Yes, Your Honor. Thank you.
22    Granting the motion now would have no practical impact on
23 how this case is litigated. The issue of the applicability of
24 the multistate settlement is front and center in this case. It
25 required DIRECTV to make disclosures in a particular way.

DIRECTV complied for five years with those disclosures.  As a result of the multistate, the FTC waited five years to sue.  Your Honor is well aware of those facts.

The FTC notably did not move to strike the second affirmative defense in the case, which is DIRECTV's compliance with applicable laws, which arguably is within the ambit of the multistate.

The question of why DIRECTV disclosed the way they did and the impact that it had on consumers is going to be the significant issue litigated in this case.  And if 50 States Attorneys General and the District of Columbia signed off on a disclosure regime that was in effect for five years and the FTC knew about it, failed to act on it, failed to intervene, and no other agency brought an enforcement action, we're going to argue, Your Honor, that that is, under the very defenses at issue in this motion, central to our defense of the case, or at least one of the many defenses other than the fact that consumers aren't deceived by these ads.

So the discovery that the FTC fears, the motion practice is going to take place I think regardless of whether this motion is granted; and I can address the reasons why it shouldn't be granted if you'd like to hear more.

**THE COURT:**  Well, I have particular questions about a couple of the defenses.

So with regard to laches, I read the *Ruby* footnote to

1  suggest that if there is ever to be a laches defense against
2  the government, affirmative misconduct is required to be shown,
3  and even that is in the nature of dicta.
4      But would you agree, Mr. Hummel, that to prevail on the
5  laches defense, you've got to prove and, thus, plead
6  affirmative misconduct?
7          **MR. HUMMEL:**  So I don't read the footnote quite that
8  way.  What the footnote actually says is that the same
9  strictures apply as would apply in the case of an assertion of
10 estoppel.
11     But even if you, Your Honor, were to say that there's an
12 affirmative misconduct that's required, you would have to find
13 on this motion that there is no set of circumstances under
14 which this defense could succeed, and we haven't even started
15 to take discovery.
16         **THE COURT:**  Well, that's not quite right.  For me to
17 dismiss it with prejudice, I would have to include that.
18         **MR. HUMMEL:**  Right.
19         **THE COURT:**  For me to dismiss it without prejudice, I
20 would make you plead it --
21         **MR. HUMMEL:**  Fair enough.
22         **THE COURT:**  -- if you can do so under the strictures
23 of Rule 11.  I think that is probably going to be the
24 challenge.  So --
25         **MR. HUMMEL:**  So let me address that issue front and

1  center then.
2      In terms of the definition of "affirmative misconduct,"
3  Your Honor, I think you look to other Ninth Circuit law in that
4  regard, specifically the *Lazy FC Ranch* case, which says the
5  court would apply a flexible standard.
6      Our view is, as evidenced from the Friedman declaration,
7  that affirmative misconduct in this circumstances could be that
8  the FTC allowed DIRECTV to disclose the first year price, the
9  existence of a two-year agreement, the existence of an early
10 cancellation fee, and the negative option offers in the way
11 that they did for five years and then waited, conducted an
12 investigation on other matters, and then decided to sue when
13 nothing else panned out because of some sort of agency inertia?
14 That's a theory that I think does rise to the level under the
15 flexible standard set forth in the cases.
16     And I'll say this, you know, about laches:  I don't
17 disagree with Your Honor that some showing of misconduct is
18 required and misconduct, again, as I said, is flexible.  But
19 laches is really, at its core, this notion of unreasonable
20 delay that prejudices a defendant and results in a trial or
21 litigation by ambush.
22     And I'd suggest that given the circumstances that you
23 could read from the Friedman declaration where DIRECTV
24 negotiated with the states and relied on what they did with the
25 FTC fully involved and knowledgeable about the terms of the

1  settlement, that can rise to the level, Your Honor, where you
2  may decide this is fundamentally unfair to go forward with this
3  and impose monetary relief against DIRECTV for having relied on
4  that settlement.  You could find that.
5           **THE COURT:**  Well, I think, then, that seems to
6  dovetail with your waiver argument.
7           But just from a formal perspective, it does seem to me
8  that under *Twombly* and *Iqbal* -- and I'm likely to find that
9  those standards apply; that is the consistent finding of courts
10 in this district -- the first step before getting to the
11 equitable argument is to have it framed very clearly:  Here's
12 the standard.  Here are the particular facts we're alleging
13 meet the standard.  And then I can assess that as a matter of
14 pleading.
15          So I think -- that's what I'm trying to get clear now.
16 When you say that you agree that some form of misconduct is
17 required, it appears to me that the only Ninth Circuit
18 authority that goes to this speaks specifically to affirmative
19 misconduct.
20          And it strikes me that if that's true, then that's
21 something you would have to plead, and you would have to plead
22 in the Answer particular facts that you allege would support
23 that inference, and then I would make -- and then I would make
24 a decision as to whether you meet the threshold or not.
25          **MR. HUMMEL:**  I would submit, Your Honor, that we

1  pleaded the facts that we now know.  We have now pleaded the
2  facts relating to the unreasonable delay; the fact that
3  DIRECTV, as I've said before, relied on what the FTC knew
4  about, and then they turn around and sue on the identical
5  conduct saying that disclosures were inadequate and consumers
6  were harmed.  There is something fundamentally unfair.
7      And, look, we struggled mightily, I'll be honest, with
8  trying to fit these factual circumstances into traditional
9  equitable defenses, but this is kind of classic laches.  It is
10 also kind of classic waiver where you have an FTC that's
11 involved in the negotiations essentially by not interceding,
12 not objecting, not requiring the states to do more, and then
13 letting us live with that regime for five years.  That's what I
14 now know.
15     What I don't know is what we're going to discover if
16 Your Honor allows discovery on this issue, which will go
17 forward anyway under the second affirmative defense.  But if
18 Your Honor does allow this, we don't know what's in the
19 correspondence files between the FTC and the various States
20 Attorneys General.  They've argued they're different
21 sovereigns.  Then that certainly is discoverable.
22     There may well be, because we sort of have a hint with
23 certain interaction that occurred with the states of
24 Washington, Tennessee, and Vermont, that the FTC said, "You
25 take care of these issues.  We'll take care of others."  And

now they come back and take care of the others, or they sue on the others again.

That seems to me, Your Honor, you should let this go forward and there will be plenty of opportunities for the Court to address the viability of the defenses down the road regardless of whether it strikes on this sort of disfavored motion to strike an affirmative defense without all the facts and circumstances.

**THE COURT:** All right. Mr. Snow --

**MR. SNOW:** Your Honor, there's a lot I would like to respond to.

**THE COURT:** -- on laches? Yes.

**MR. SNOW:** So to start out at a high level, the notion that this is classic laches or classic waiver is completely inaccurate.

In order to plead laches, DIRECTV has to allege that there was unforgivable or inappropriate delay. Now, all they've alleged is that five years past; but during that time, and this is not before the Court, but during that time, there was active negotiation throughout the entire five years. There were two CIDs served. There was document productions in connection with those CIDs. There were settlement negotiations throughout that period.

Now, they haven't alleged that the FTC stopped communicating with them in connection with the investigation.

1  They haven't alleged that the civil investigative demands were
2  taken off the table.  They certainly haven't alleged that the
3  FTC told them the case was over.  And they haven't alleged any
4  of those things because they're not true.
5      So this is not a case where a delay extends for a long
6  period of time and then a potential defendant relies on the
7  fact that an investigation or an action will never take place.
8      DIRECTV has alleged very carefully that they've relied on
9  the multistate settlement, but they've never alleged that they
10 relied on the FTC not taking action, and that's because they've
11 known from the start that the FTC was pursuing this
12 investigation.
13         **THE COURT:**  Let me stop you.  I think you're both
14 getting into the merits --
15         **MR. SNOW:**  That's right.
16         **THE COURT:**  -- and the merits are what the case will
17 be about, but right now I'm taking step one, which is are these
18 defenses adequately pled under the standard so that I can
19 assess if the pleading threshold is met.
20         **MR. SNOW:**  If I could speak to the standard for laches
21 because there's something that I'd like to clarify if I could.
22         **THE COURT:**  Sure.
23         **MR. SNOW:**  My apologies.
24      You described the footnote of *Ruby* as in the manner of
25 dicta, and I believe it is the holding of *Ruby*.  That footnote

motivated the Ninth Circuit to dismiss the affirmative defense of laches. It's the last sentence of the footnote where it says these principles yield that the -- from the defense of laches should be denied, or something along those lines. So that is removing an affirmative defense from the case.

The principle articulated in *Ruby* that laches is not available to the government when it is enforcing a public interest was necessary to that holding. So I think that is a holding of *Ruby*, and I think that rule is binding on this Court.

As to affirmative misconduct, the notion that, as DIRECTV has alleged, there is some affirmative misconduct even suggested by the FTC declining to participate in negotiations, it makes no sense to me. In fact, I think the most reasonable interpretation of the FTC's actions as alleged is that we were preserving our claims, not waiving them, not offering them for preclusion and all that.

**THE COURT:** Right. But, again, here's, just to be transparent, what I'm thinking. What I'm thinking is if I were to dismiss this defense under *Ruby*, I would kick it back and say, *Ruby* requires that affirmative misconduct be pled, and then you would plead whatever facts you think support the existence of affirmative misconduct. And then presumably we would -- either you'd do that or you wouldn't because you can't do it under Rule 11; and then when it is teed up, then there

1  could be a motion to dismiss on the ground that as pled, the
2  requirements of the defense are not satisfied even from a
3  pleading standpoint under *Twombly* and *Iqbal*.
4      So I'm not at the point that I need to get to whether
5  there is laches here.
6          **MR. SNOW:**  Sure.
7          **THE COURT:**  I'm trying to, in a systematic way, ensure
8  that the pleadings meet the standards of law, which is the
9  stage that we're at.
10     And so my second question goes to waiver; and, again, it
11 addresses the same question.  Mr. Hummel, you instructed me in
12 your brief that you're conceding, and the law was pretty clear
13 on this, that for there to be a waiver against the government,
14 it must be an unmistakable waiver.
15     And, again, do you agree that that is essentially the same
16 as the affirmative misconduct standard?  Is it something
17 different?  And should I require you to specifically plead that
18 there was an unmistakable waiver and allege the specific
19 reasons to a *Twombly/Iqbal* level of specificity as to why so I
20 can evaluate whether your claim is legally sufficient?
21         **MR. HUMMEL:**  It's a fair reading of the law what you
22 just said.  I think that on waiver there does need to be
23 unmistakable waiver.
24     I think if additional facts are required, I wouldn't
25 necessarily concede that on that affirmative defenses are

1  subject to *Twombly/Iqbal*.  I think that's extending beyond what
2  this court and other courts have said; but if that's the
3  Court's inclination, I think we can plead that.
4     I would like to respond to one issue on this notion that
5  we were -- that DIRECTV was aware because of the pendency of
6  CIDs.  And I know I'm getting into the merits a bit, but it
7  does impact, I think, hopefully the Court's thinking in terms
8  of laches, estoppel, and waiver.
9     The CIDs were much broader than the very limited issues on
10 which the FTC decided ultimately to sue.
11         **THE COURT:**  I understand your position, but it's
12 premature.
13         **MR. HUMMEL:**  Understood.
14         **THE COURT:**  And then for Mr. Snow, one argument I
15 wasn't sure I understood is the argument that the FTC can't
16 waive an act of Congress, which obviously is true.  But that
17 doesn't seem to me to be what would be at issue here.
18     In other words, I think the theory would be that the FTC
19 waived action against this particular defendant by its conduct.
20 In other words, I don't understand you saying that you would be
21 waiving the existence of a statute.  What exactly did you mean
22 by that?
23         **MR. SNOW:**  Well, so, the *Bronson Partners* case that we
24 cite dismisses an affirmative defense on this basis, and the
25 principle behind that case is that an individual -- you know,

1   maybe an agent of the government -- cannot waive compliance
2   with the law.
3       And in the case that *Bronson Partners* relied on, *SEC*
4   *versus Morgan, Lewis & Bockius*, that was an SEC case; and the
5   SEC, like the FTC, has an enabling statute.  And so if the FTC
6   were to purportedly waive compliance here, then that could
7   waive compliance with the law -- with the FTC Act in general.
8       I think that's the principle behind the *SEC versus Morgan,*
9   *Lewis & Bockius* case; but as Your Honor's questions suggested,
10  I don't think making that determination as to whether waiver is
11  possible ever by the government is necessary here because there
12  have been no allegations that would support the conclusion that
13  waiver is unmistakable in this case.
14          **THE COURT:**  All right.
15          **MR. SNOW:**  And, Your Honor, one other point that I'd
16  like to respond to something you said.  I think there's a third
17  option between dismissing sort of conclusively with prejudice
18  and dismissing with leave to amend, and that's the suggestion
19  of cases like *Perez versus Gordon & Wong* where Judge Koh says
20  that affirmative defenses can be added liberally when facts are
21  discovered.
22      And so I think Your Honor could dismiss at least these
23  defenses with prejudice with the understanding that if
24  discovery proceeds and affirmative misconduct is discovered,
25  then at that point the affirmative defenses could be added in

1  an amendment to the pleadings, and it wouldn't require an
2  extended series of motions to strike insufficient affirmative
3  defenses at this stage of the case.  So that's one other
4  option.
5         **THE COURT:**  All right.  Well, those are the questions
6  that I had.
7       Submitted?
8         **MR. HUMMEL:**  Submitted, Your Honor.
9         **MR. SNOW:**  Submitted.  Thank you.
10        **THE COURT:**  All right.  I will issue a ruling as soon
11 as I can.
12        **MR. SNOW:**  Thank you.
13        **MR. HUMMEL:**  Thank you, Your Honor.
14        **THE COURT:**  You're welcome.
15            (Proceedings adjourned at 1:22 p.m.)
16                         ---oOo---
17                   **CERTIFICATE OF REPORTER**
18       I certify that the foregoing is a correct transcript
19 from the record of proceedings in the above-entitled matter.
20 DATE:   Friday, August 14, 2015
21
22
23       _____
24       Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                       U.S. Court Reporter
25