UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>   Plaintiff,<br>  v.<br>DIRECTV, INC., et al.,<br>   Defendants. | Case No. 15-cv-01129-HSG (MEJ)<br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 56, 66, 70 |

## INTRODUCTION

Pending before the Court are the parties' three discovery dispute letters regarding Defendants DIRECTV and DIRECTV, LLC's (collectively, "Defendants") Federal Rule of Civil Procedure 30(b)(6) deposition notice (Dkt. Nos. 56 and 66) and Plaintiff Federal Trade Commission's (the "FTC") Request for Production of Documents No. 4 (Dkt. No. 70, "RFP Ltr."). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

**A. Factual Background**

Defendants provide direct-to-home digital television service and multi-channel video programming distribution throughout the United States. Compl. ¶ 10, Dkt. No. 1. They offer this service to consumers by subscription, which consists of a programming package, a satellite dish and other necessary equipment, and installation and support services. *Id.* ¶ 11. Defendants typically require consumers to agree to a mandatory 24-month contract to receive programming and assess an "early cancellation fee" against customers who cancel their subscription before the end of 24 months. *Id.* ¶ 12.

1    Since 2007, Defendants have disseminated advertisements for their subscription service
2    that contain the following statements regarding pricing for their subscription service:
3         A. "All New! Limited Time Offer! . . . Now only $19.99*/mo."
4         B. "Package offers starting at $24.99/mo. Limited Time."
5         C. "Limited Time! $24.99/mo for 12 months."
6    *Id.* ¶ 16 & Exs. 1-3.  To the extent these advertisements contain any qualifying disclosures
7    concerning the mandatory two-year contract length and the price consumers will pay after the
8    initial period, the FTC alleges any such disclosures are inadequate.  *Id.* ¶ 17.
9         Some of Defendants' advertisements also contain statements that subscribers will receive
10   premium channels free of charge for three months.  *Id.* ¶ 18.  For example, Exhibit 1 to the
11   Complaint states "over 30 premium channels free for 3 months."  The FTC alleges these
12   advertisements do not convey that (1) Defendants automatically enroll consumers in a negative
13   option continuity plan with additional charges; (2) consumers must affirmatively cancel the
14   negative option continuity plan before the end of a trial period to avoid additional charges; (3)
15   Defendants use consumers' credit or debit card information to charge consumers monthly for the
16   negative option continuity plan; and (4) the costs associated with the negative option continuity
17   plan.  *Id.* ¶ 19.
18        The FTC further alleges Defendants engage in deceptive internet sales on their website,
19   www.directv.com.  Since 2007, Defendants have disseminated webpages that contain statements
20   that are identical or similar to the following:
21        A. "Limited Time. 140+ channels. $24.99 month for 12 months"; and
22        B. "CHOICE: 150+ channels. Only $29.99 month for 12 months"
23   *Id.* ¶ 21 & Ex. 4 at 1-2.  The FTC alleges these webpages do not convey that Defendants require
24   consumers to remain a subscriber for two years, a mandatory term which carries an early
25   cancellation fee for the failure to do so; and that Defendants charge significantly higher monthly
26   prices for their programming packages during the second year of service.  *Id.* ¶ 22.  Defendants'
27   webpages typically contain statements concerning an offer of free premium channels that are
28   identical or similar to the following: "Free for 3 months. HBO + Starz + Showtime + Cinemax."

2

1  *Id.* ¶ 23 & Ex. 4 at 1.  The FTC maintains these webpages do not convey to consumers that
2  Defendants automatically enroll consumers in a negative option continuity plan and related costs
3  described above.  *Id.* ¶ 24.

4     Consumers who call the telephone number listed in Defendants' advertisements speak with
5  a telemarketer.  *Id.* ¶ 25.  Defendants' telephonic sales presentations typically include statements
6  concerning the initial monthly prices that consumers will pay for programming packages, but the
7  FTC alleges the presentations do not adequately disclose the monthly cost to consumers of the
8  programming packages during in the second year of their subscription agreements.  *Id.*

9  **B.**  **Complaint**

10     The FTC filed this case on March 11, 2015, bringing claims under Sections 13(b) and 19
11  of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 5 of
12  the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, in connection with
13  the advertising, marketing, and sale of Defendants' multi-channel video programming subscription
14  service.  In Count I, the FTC alleges Defendants' fail to disclose or disclose adequately: (1) the
15  mandatory two-year agreement period for the subscription service, which carries an early
16  cancellation fee; and (2) the significantly higher price for programming packages, typically $25 to
17  $45 per month higher, during the mandatory second year of the consumer's agreement, and this
18  failure constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15
19  U.S.C. § 45(a).  Compl. ¶¶ 28-30.

20     In Count II, the FTC alleges Defendants' fail to disclose or disclose adequately: (1) that
21  they automatically enroll consumers in a negative option continuity plan with significant charges;
22  (2) consumers must affirmatively cancel the negative option continuity plan before the end of the
23  trial period to avoid charges; (3) Defendants use consumers' credit or debit card information to
24  charge consumers for the negative option continuity plan; and (4) the costs associated with the
25  negative option continuity plan, and this failure also constitutes a deceptive act or practice in
26  violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  *Id.* ¶¶ 31-33.

27     In Count III, the FTC alleges Defendants have charged or attempted to charge consumers
28  for access to premium channels, as part of its subscription service, through a negative option

1  feature while failing to clearly and conspicuously disclose all material terms of the transaction
2  before obtaining consumers' billing information, and that this practice constitutes a violation of
3  Section 4(1) of ROSCA, 15 U.S.C. § 8403(1).  *Id.* ¶¶ 39-40.

4  In Count IV, the FTC alleges Defendants have charged or attempted to charge consumers
5  for access to premium channels, as part of their subscription service, through a negative option
6  feature while failing to obtain consumers' express informed consent before charging their credit
7  card, debit card, bank account, or other financial account for those premium channels, and that this
8  practice constitutes a violation of Section 4(2) of ROSCA, 15 U.S.C. § 8403(2).  *Id.* ¶¶ 41-42.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters.  Fed. R. Civ. P. 26(c)(1).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## DISCUSSION

**A.    Rule 30(b)(6) Letters**

The parties' first two letters concern Defendants' Rule 30(b)(6) Notice of Deposition served on the FTC on June 22, 2015, which contains five topics:

4

**TOPIC NO. 1.**

All communications, negotiations, and discussions between or involving the FTC, on the one hand, and DIRECTV (including its attorneys) and/or any or all of the "attorneys general of all 50 states and the District of Columbia," on the other, both before and after the effective date of the multi-state settlement agreement, concerning the multi-state settlement agreement and any of its terms.

**TOPIC NO. 2.**

The decision by the FTC, including the reasons for the decision, not to object to, to intervene in, or to seek to modify or augment the terms of the multi-state settlement agreement.

**TOPIC NO. 3.**

The results of any and all research, surveys, or tests conducted by the FTC concerning DIRECTV'S advertising that the FTC contends has been or is deceptive.

**TOPIC NO. 4.**

The FTC's claim for restitution, refund of monies paid, or disgorgement of ill-gotten gains, as set forth in the "prayer for relief (Paragraph B of the COMPLAINT), including, but not limited to, any computation of monetary relief sought by the FTC and any conclusions regarding the nature and extent of any alleged injury to consumers that the FTC contends was caused by DIRECTV'S advertising.

**TOPIC NO. 5.**

The methods used and results of any and all investigations by the FTC into the reasons for or validity of alleged consumer complaints about DIRECTV'S advertising practices.

Dkt. No. 66, Ex. A.

1. <u>Topics 1 and 2</u>

As to Topics 1 and 2, Defendants explain the attorney generals of all 50 states previously brought claims about the advertising disclosures, but those claims were resolved by a Multi-State Settlement Agreement (the "MSA"), effective 2011, that covers the advertising disclosures at issue in this case. Dkt. No. 66 at 2. Defendants argue the FTC is fully aware of the terms of the settlement; was invited to join in the settlement, declined, but thereafter allowed Defendants to implement a new advertising regime consistent with the MSA; and Defendants have not thereafter been the subject of an enforcement action by any state. *Id.* Defendants maintain Topics 1 and 2

1    are relevant to whether the FTC's requested injunctive relief may be inconsistent with the terms of
2    the MSA, whether the claims are at odds with what its lawyers discussed with Defendants during
3    the negotiations, and whether the FTC is seeking monetary redress that may include double
4    recoveries in light of the restitution program of the MSA. *Id.* at 3.
5        In response, the FTC argues that if the presiding judge in this matter, the Honorable
6    Haywood Gilliam, grants its pending Motion to Strike six of Defendants' affirmative defenses,
7    Topics 1 and 2 will become moot. *Id.* at 5; *see also* Dkt. No. 32 (Motion to Strike). After
8    Defendants served the Rule 30(b)(6) notice, the FTC agreed to produce a witness on Topics 3, 4,
9    and 5, but proposed deferring the scheduling of testimony on Topics 1 and 2 pending the Court's
10   resolution of its Motion to Strike. Dkt. No. 66 at 5. Defendants' six affirmative defenses
11   generally contend the FTC's action is barred by the agency's failure to participate in Defendants'
12   settlements with states' attorneys general in 2011. *Id.*; *see also* Dkt. No. 27 (Amended Answer).
13       Defendants maintain that, even if the FTC's Motion to Strike were to be granted, the
14   noticed topics have independent relevance. Dkt. No. 66 at 3. They argue the FTC's views
15   regarding Defendants' disclosures and the sufficiency of the MSA "are significant issues to be
16   litigated in this case," and the deposition could reveal the FTC approved of critical aspects of the
17   settlement that implicate the disclosure issues in this lawsuit. *Id.* Defendants further argue a
18   deposition on these topics could reveal the FTC pushed for particular revisions to Defendants'
19   disclosures, which would be relevant to the appropriate relief, if any, in this case. *Id.* at 4.
20   Defendants note the FTC has agreed to produce nonprivileged communications from the states to
21   the FTC concerning Defendants' ads, and the FTC has not objected on relevance to a request to
22   produce communications concerning why the FTC did not object to the MSA. *Id.*
23       Having reviewed the parties' positions, the Court finds any decision regarding Topics 1
24   and 2 is best deferred until after resolution of the FTC's Motion to Strike. Although Defendants
25   speculate the discovery is relevant regardless of the FTC's Motion, the Court finds it prudent to
26   make this determination after the pleadings are settled so that the parties may avoid unnecessary
27   disputes. Further, Defendants admit they initially agreed to defer Topics 1 and 2 pending
28   resolution of the Motion to Strike, and they have not shown a compelling need to obtain the

discovery now, prior to resolution of the Motion. *Id.* at 3. Accordingly, Defendants' motion to compel a Rule 30(b)(6) deposition on Topics 1 and 2 is DENIED WITHOUT PREJUDICE.

2. Topics 3-5

On August 28, 2015, Defendants deposed the FTC regarding Topics 3 through 5. The FTC produced Kerry O'Brien, the Assistant Director for the FTC's Western Region, as its designated witness. Dkt. No. 56 at 3. At the deposition, FTC counsel directed Ms. O'Brien not to answer questions about the following:

> • the FTC's factual bases for asserting that DIRECTV's ads have been deceptive, including the existence of any surveys or studies of these ads.
>
> • steps taken by the designee witness to educate herself regarding the noticed topics.
>
> • the FTC's investigation, if any, of alleged consumer complaints referenced in the Complaint, even though the witness said that she reviewed a summary of such complaints as part of her preparation.
>
> • the monetary relief the FTC seeks, including basic questions about whether the witness looked at any calculations of alleged consumer injury.

Dkt. No. 56 at 1-2. Defendants argue they are entitled to discovery regarding these topics, including the facts surrounding the FTC's investigation, including the existence of any surveys, studies or research, as well as whether the FTC possesses or has conducted any studies, surveys, or research regarding Defendants' advertisements. *Id.* at 2.

According to the FTC, no discovery on these matters is required as the Complaint sets forth all facts supporting its allegations. *Id.* at 3. It argues what Defendants actually seek to compel are not the facts underlying the FTC's allegations, but information about its investigative techniques. *Id.* at 4. The FTC maintains this information is privileged as attorney work product and deliberative process. *Id.* The FTC further argues Defendants are not entitled to further testimony about Ms. O'Brien's preparation, including disclosure of a summary of complaints she reviewed prior to the deposition, because such information is also privileged. *Id.*

In response, Defendants argue any claim of privilege does not preclude inquiry into the investigation or its scope because the FTC's "fact gathering" activities are the proper scope of a

7

Rule 30(b)(6) deposition. *Id.* at 2.

A party may instruct a deposition witness not to answer when necessary to preserve a privilege. Fed. R. Civ. P. 30(c)(2). The work product privilege protects against disclosure of the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). However, a mere allegation that the work product doctrine applies is insufficient. *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984), *cert. dismissed*, 469 U.S. 1199 (1985). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (citation omitted). "Thus, work product does not preclude inquiry into the mere fact of an investigation." *Id.*; *see also Ressler v. United States*, 2012 WL 3231002, at *3 (D. Colo. Aug. 6, 2012) (federal agency's "fact gathering" activities proper subject of a 30(b)(6) deposition).

Having reviewed the parties' positions, the Court finds Defendants have shown Topics 3 through 5 are designed to elicit discoverable information, including questions relating to which ads were allegedly deceptive, how they were deceptive, whether the FTC has any factual support for its contention that consumers have been deceived, its investigation of alleged consumer complaints, and the scope of alleged consumer harm or putative bases for monetary relief. Dkt. No. 56 at 1. The factual information gathered by the FTC may be relevant, and inquiry about the fact gathering process utilized by the FTC may lead to the discovery of admissible evidence. Consequently, the Rule 30(b)(6) topics concern discoverable information. *See Ressler*, 2012 WL 3231002, at *3.

Defendants also have the right to interrogate a government designee witness regarding preparations. *See EEOC v. Sterling Jewelers, Inc.*, 2010 WL 2803017, at *2 (W.D.N.Y. July 15, 2010) (disclosure of who was interviewed, what the deponent did to refresh recollection, and what facts agency considered does not reveal agency's trial strategy or its analysis of the case). However, the mere fact that Ms. O'Brien acknowledged she prepared for her deposition in part by reviewing a summary of consumer complaints regarding Defendants' ads does not entitle

8

1  Defendants to testimony regarding the summary.  The FTC maintains this "summary" is a
2  "confidential agency analysis . . . prepared by a staff economist in the FTC's Bureau of Economics
3  at the direction of FTC counsel," and "is pre-decisional work product, created for a law
4  enforcement purpose, containing facts interwoven with FTC staff analysis and conclusions about
5  investigational objectives."  Dkt. No. 56 at 5.  Defendants do not deny the summary is privileged
6  but argue "any work product or deliberative process protection was waived once the summary was
7  reviewed by the witness to support her testimony."  *Id.* at 3 (citing *Mattel, Inc. v. MGA Entm't,
8  Inc.*, 2010 WL 3705782, at *5 (C.D. Cal. Aug. 3, 2010) ("Federal Rule of Evidence 612 renders
9  discoverable 'written materials reviewed prior to a deposition . . . to permit discovery of writings [
10 ] that a witness reviewed before a deposition for the purpose of refreshing his or her recollection.'"
11 (quoting *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985) (omissions in
12 original))).  However, unlike the witness in *Mattel*, there is no indication Ms. O'Brien used the
13 summary "to refresh her recollection," and Rule 612 applies only where a witness "uses a writing
14 to refresh memory."  Fed. R. Evid. 612(a).  "Thus, even if the witness consults a writing while
15 testifying, the adverse party is not entitled to see it unless the writing influenced the witness's
16 testimony."  *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 144 (D.C. Cir. 2015) (citation and
17 internal quotation omitted).  Accordingly, Defendants have not shown they are entitled to question
18 Ms. O'Brien on the contents of the summary.
19     Finally, Defendants are entitled to information regarding the monetary relief sought.  *See
20 City and Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) ("Plaintiff
21 should provide its assessment of damages . . . in sufficient detail so as to enable each of the
22 multiple Defendants in this case to understand the contours of its potential exposure and make
23 informed decisions as to settlement and discovery.").  However, the FTC has already disclosed
24 that it plans to seek for consumer redress "the amount of money paid by the consumers to
25 DIRECTV stemming from its alleged misconduct, less refunds made."  Dkt. No. 56 at 5.  This is
26 the appropriate standard under the FTC Act.  *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th
27 Cir. 1993); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1088 (C.D. Cal. 2012).  While
28 Defendants seek more detailed calculation methodologies, they do not deny the FTC's argument

that information about the precise measure of monetary harm to their customers is in their own hands. Dkt. No. 56 at 5. They also do not deny they refused to provide this data to the FTC in response to the FTC's interrogatory request, objecting that the request "seeks detailed information regarding tens of millions of customers." *Id.* At this point in the litigation, it is not clear how Defendants expect the FTC to provide testimony about detailed information that they themselves maintain.

Based on this analysis, the Court GRANTS Defendants' motion to compel further responses to Topics 3 through 5, except as to (1) Defendants' request for further testimony regarding the contents of the summary Ms. O'Brien reviewed, (2) calculation methodologies for the monetary relief sought, and (3) any testimony that is properly deemed privileged.

**B.  RFP Letter**

On June 26, 2015, the FTC served their First Set of Requests for Production. RFP Ltr. at 2. Request No. 4 seeks the production of "[a]ll advertisements created, drafted, or prepared, but not disseminated to consumers, relating to the Service." *Id.* The FTC maintains these draft ads are relevant because they may reveal Defendants' reasons for delivering the ads in their final form. *Id.* The FTC speculates "[a] draft ad with better disclosures that is rejected out of concern that such an ad would attract fewer customers would tend to show that DIRECTV acted consistently with an incentive to mislead the public." *Id.* The FTC also argues evidence showing Defendants intended to make the misleading misrepresentations is relevant to establish that its misrepresentations were material. *Id.* The FTC contends "evidence of intent to mislead consumers is strong evidence that the ads are in fact misleading to consumers." *Id.* at 3.

The FTC further argues the draft ads are relevant to Defendants' "good faith" affirmative defense. *Id.*; Am. Answer at 11 ("Defendants acted with a good faith belief that they had good cause and/or legitimate business reasons to act as they did and did not directly or indirectly perform any acts that would constitute a violation of consumers' rights."). Specifically, the FTC argues Defendants cannot simultaneously claim their actions were undertaken in good faith while refusing to produce documents relevant to establishing whether that good faith exists. RFP Ltr. at 3.

Defendants object to Request No. 4, arguing: (1) consumers never saw draft ads and thus could not have been deceived by them; (2) any intent or incentive to deceive consumers is not relevant to prove liability; (3) the probative value of the drafts is based on pure speculation by the FTC; (4) the burden of searching for and producing draft ads far outweighs any extremely limited probative value of this material; and (5) a high percentage of the drafts at issue are privileged. *Id.* at 4.

Section 5(a) of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce" and empowers the FTC to prevent such acts or practices. 15 U.S.C. § 45(a)(1), (2). An act or practice is deceptive if (1) there is a representation, omission, or practice, (2) that is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994), *cert. denied*, 514 U.S. 1083 (1995). "[P]roof that the defendant intended to deceive consumers or acted in bad faith is unnecessary to establish a section 5(a) violation." *Commerce Planet*, 878 F. Supp. 2d at 1083 (citing *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988)). However, evidence which creates an inference that a defendant had the requisite knowledge that advertisements were misleading can be used to establish liability. *Id.* at 1082 (discussing as relevant the fact that the defendant had considered and "rejected the company's experiments in placing clearer disclosures and sending post-transaction emails because they hurt conversion rates").

While the FTC need not prove Defendants intended to mislead consumers, the Court finds that if Defendants rejected draft ads with clearer disclosures out of concern that such ads would attract fewer customers, this would tend to show they acted consistently with an incentive to mislead the public. *See id.* (evidence that defendant rejected experiments placing clearer disclosures and sending post-transaction emails creates an inference that the defendant had the requisite knowledge to be held liable for deceptive website marketing). Thus, as draft ads may reveal Defendants' reasons for delivering the ads in their final form, the Court finds they are relevant. *See World Travel Vacation Brokers*, 861 F.2d at 1029 ("the omission of material information, even if an advertisement does not contain falsehoods, may cause the advertisement to

11

violate section 5.").

Further, the FTC Act requires proof that the representation is material, and evidence that Defendants disseminated ads they knew where likely to mislead consumers can support a presumption of materiality. *See Kraft, Inc. v. FTC*, 970 F.2d 311, 323 (7th Cir. 1992) (evidence, including that defendant continued to run deceptive ads and even rejected proposed alternatives that would have allayed concerns over their deceptive nature, established the claim was material to consumers). In this case, the price and terms of Defendants' service, including the mandatory two-year term with an early cancellation fee, significantly higher monthly prices for programming packages during the second year of service, and the negative option continuity plan, could all be considered material terms of Defendants' service. As such, evidence showing Defendants considered and rejected ads with more prominent disclosures out of concern such disclosures would deter consumers from purchasing their service would be strong evidence that the ads actually delivered to consumers were designed to be misleading. *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (a representation "is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" (quoting *Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984))).

Defendants argue that production of all draft advertisements spanning over seven years would be unduly burdensome. RFP Ltr. at 5. Defendants note they already produced over 444,000 pages of documents to the FTC prior to the filing of this Complaint, and those productions included many draft advertisements. *Id.* at 5-6. Defendants further argue privilege review would be particularly burdensome "because it would require examining whether particular notations on draft advertisements reflect review in the RAP process or by other counsel." *Id.* at 6.[1] The FTC argues that, even if some privilege attaches to the requested material, the request is not unduly burdensome because "numerous tools exist for counsel to reduce the burden of reviewing large volumes of potentially privileged documents, including word searches (e.g., for 'attorney-client privilege') and sender/recipient filters (e.g., for communications to/from counsel)." *Id.* at 4.

---

[1] Although the FTC argues otherwise, the Court finds Defendants have not waived any privilege relating to production of the draft ads.

1    Having reviewed the parties' positions, the Court finds good cause to limit the FTC's
2    request.  On one hand, as discussed above, the FTC has established the relevancy of its request.
3    On the other hand, the FTC's position—that Defendants rejected draft ads with clearer disclosures
4    out of concern that such ads would attract fewer customers—is merely speculative at this point,
5    and the FTC has not shown why it needs all draft ads and related documents from the past seven
6    years to establish this claim when a representative sample could be just as probative.  Defendants
7    maintain they would need to search for and review "hundreds of thousands of additional ads" to
8    find and produce all draft ads relevant to the FTC's request.  *Id.*  Considering the importance of
9    the requested discovery to the FTC's case, the Court finds the burden of producing *all* draft ads
10   and related documents outweighs its likely benefit.  *See* Fed. R. Civ. P. 26(b)(1) (In determining
11   the scope of discovery, court must consider "the importance of the issues at stake in the action, the
12   amount in controversy, the parties' relative access to relevant information, the parties' resources,
13   the importance of the discovery in resolving the issues, and whether the burden or expense of the
14   proposed discovery outweighs its likely benefit.").  Accordingly, the Court ORDERS the parties to
15   meet and confer in person to determine whether they can agree to a more limited production.  If
16   unable to reach an agreement, the parties shall file an updated joint letter in compliance with the
17   undersigned's Discovery Standing Order, and each party shall attach their proposal.

## CONCLUSION

Based on the analysis above, the Court **ORDERS** as follows:

1) Defendants' motion to compel a Rule 30(b)(6) deposition on Topics 1 and 2 is **DENIED WITHOUT PREJUDICE**, pending resolution of the FTC's pending Motion to Strike;

2) Defendants' motion to compel further responses to Topics 3 through 5 is **GRANTED**, except as to (1) Defendants' request for further testimony regarding the contents of the summary Ms. O'Brien reviewed; (2) calculation methodologies for the monetary relief sought; and (3) any testimony that is properly deemed privileged; and

3) The FTC's motion to compel Defendants response to Request No. 4 is **GRANTED**.  However, the parties shall meet and confer to determine whether they can agree to a more limited production.  If unable to reach an agreement, the parties shall file an updated joint

letter in compliance with the undersigned's Discovery Standing Order, and each party shall attach their proposal.

**IT IS SO ORDERED.**

Dated: December 3, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

14