UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, INC., et al.,<br><br>Defendants. | Case No. 15-cv-01129-HSG  (MEJ)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 82 |

## INTRODUCTION

Pending before the Court is the parties' discovery dispute letter concerning Defendants DIRECTV and DIRECTV, LLC's (collectively, "Defendants") subpoenas to seven non-party consumers (collectively, the "consumer declarant subpoenas"). Dkt. No. 82. Through the joint letter, Plaintiff Federal Trade Commission (the "FTC") seeks a protective order forbidding the depositions and document productions requested. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

**A.   Factual Background**

Defendants provide direct-to-home digital television service and multi-channel video programming distribution throughout the United States. Compl. ¶ 10, Dkt. No. 1. They offer this service to consumers by subscription, which consists of a programming package, a satellite dish and other necessary equipment, and installation and support services. *Id.* ¶ 11. Defendants typically require consumers to agree to a mandatory 24-month contract to receive programming and assess an "early cancellation fee" against customers who cancel their subscription before the end of 24 months. *Id.* ¶ 12.

1    Since 2007, Defendants have disseminated advertisements for their subscription service
2    that contain the following statements regarding pricing for their subscription service:
3        A. "All New! Limited Time Offer! . . . Now only $19.99*/mo."
4        B. "Package offers starting at $24.99/mo. Limited Time."
5        C. "Limited Time! $24.99/mo for 12 months."
6    *Id.* ¶ 16 & Exs. 1-3.  To the extent these advertisements contain any qualifying disclosures
7    concerning the mandatory two-year contract length and the price consumers will pay after the
8    initial period, the FTC alleges any such disclosures are inadequate.  *Id.* ¶ 17.
9    Some of Defendants' advertisements also contain statements that subscribers will receive
10   premium channels free of charge for three months.  *Id.* ¶ 18.  For example, Exhibit 1 to the
11   Complaint states "over 30 premium channels free for 3 months."  The FTC alleges these
12   advertisements do not convey that (1) Defendants automatically enroll consumers in a negative
13   option continuity plan with additional charges; (2) consumers must affirmatively cancel the
14   negative option continuity plan before the end of a trial period to avoid additional charges; (3)
15   Defendants use consumers' credit or debit card information to charge consumers monthly for the
16   negative option continuity plan; and (4) the costs associated with the negative option continuity
17   plan.  *Id.* ¶ 19.
18   The FTC further alleges Defendants engage in deceptive internet sales on their website,
19   www.directv.com.  Since 2007, Defendants have disseminated webpages that contain statements
20   that are identical or similar to the following:
21       A. "Limited Time. 140+ channels. $24.99 month for 12 months"; and
22       B. "CHOICE: 150+ channels. Only $29.99 month for 12 months"
23   *Id.* ¶ 21 & Ex. 4 at 1-2.  The FTC alleges these webpages do not convey that Defendants require
24   consumers to remain a subscriber for two years, a mandatory term which carries an early
25   cancellation fee for the failure to do so; and that Defendants charge significantly higher monthly
26   prices for their programming packages during the second year of service.  *Id.* ¶ 22.  Defendants'
27   webpages typically contain statements concerning an offer of free premium channels that are
28   identical or similar to the following: "Free for 3 months. HBO + Starz + Showtime + Cinemax."

2

*Id.* ¶ 23 & Ex. 4 at 1. The FTC maintains these webpages do not convey to consumers that Defendants automatically enroll consumers in a negative option continuity plan and related costs described above. *Id.* ¶ 24.

Consumers who call the telephone number listed in Defendants' advertisements speak with a telemarketer. *Id.* ¶ 25. Defendants' telephonic sales presentations typically include statements concerning the initial monthly prices that consumers will pay for programming packages, but the FTC alleges the presentations do not adequately disclose the monthly cost to consumers of the programming packages during in the second year of their subscription agreements. *Id.*

**B.    Complaint**

The FTC filed this case on March 11, 2015, bringing claims under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, in connection with the advertising, marketing, and sale of Defendants' multi-channel video programming subscription service. In Count I, the FTC alleges Defendants' fail to disclose or disclose adequately: (1) the mandatory two-year agreement period for the subscription service, which carries an early cancellation fee; and (2) the significantly higher price for programming packages, typically $25 to $45 per month higher, during the mandatory second year of the consumer's agreement, and this failure constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Compl. ¶¶ 28-30.

In Count II, the FTC alleges Defendants fail to disclose or disclose adequately: (1) that they automatically enroll consumers in a negative option continuity plan with significant charges; (2) consumers must affirmatively cancel the negative option continuity plan before the end of the trial period to avoid charges; (3) Defendants use consumers' credit or debit card information to charge consumers for the negative option continuity plan; and (4) the costs associated with the negative option continuity plan, and this failure also constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *Id.* ¶¶ 31-33.

In Count III, the FTC alleges Defendants have charged or attempted to charge consumers for access to premium channels, as part of its subscription service, through a negative option

feature while failing to clearly and conspicuously disclose all material terms of the transaction before obtaining consumers' billing information, and that this practice constitutes a violation of Section 4(1) of ROSCA, 15 U.S.C. § 8403(1).  *Id.* ¶¶ 39-40.

In Count IV, the FTC alleges Defendants have charged or attempted to charge consumers for access to premium channels, as part of their subscription service, through a negative option feature while failing to obtain consumers' express informed consent before charging their credit card, debit card, bank account, or other financial account for those premium channels, and that this practice constitutes a violation of Section 4(2) of ROSCA, 15 U.S.C. § 8403(2).  *Id.* ¶¶ 41-42.

### C.     Consumer Declarant Subpoenas

On November 6, 2015, Defendants served the seven consumer declarant subpoenas.  Jt. Ltr., Exs. A-G.  The subpoenas seek information regarding communications with the FTC, including draft declarations, communications with DIRECTV about their accounts, communications with state attorneys general and regulatory agencies, and records of subscriptions to competitive TV services.  *Id.*[1]  These seven consumers provided the FTC with sworn declarations in 2013 and 2014 as part of the agency's investigation of Defendants.  Jt. Ltr. at 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes.  *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).  However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

---

[1] Each of the document requests is identical.

4

1 "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

**DISCUSSION**

The FTC brings this request for a protective order under Rule 26(c) "to protect the agency's interests and to relieve seven private citizens from the burdens of DIRECTV's efforts to seek discovery of marginal relevance." Jt. Ltr. at 2. Although the FTC produced these declarations to Defendants, it argues "they represent just seven complaining consumers among the *millions* of complaints received by the FTC, the Better Business Bureau, and, we understand, by DIRECTV itself." *Id.* (emphasis in original). The FTC maintains Defendants "cannot avoid the fact that the testimony and documents of the seven declarants is of extremely limited value when compared to these other sources of consumer complaints available from the parties themselves." *Id.* The FTC notes it has not offered any of the consumer declarations in support of its Complaint, nor does it intend to call any of the consumer declarants as witnesses at trial. *Id.* As such, Defendants' consumer declarant subpoenas "waste agency resources and inflict collateral damage on seven private citizens." *Id.*

In response, Defendants argue the FTC "has made clear that it will rely on consumer complaints against DIRECTV to support its case," noting that in its Complaint, the FTC asserts Defendants' "advertising has been the focus of 'tens of thousands of consumer complaints.'" *Id.* at 4; Compl. ¶ 15. As Defendants intend to show "consumer complaints in general—and these seven in particular—are unreliable," they subpoenaed the consumers "the FTC placed at issue by convincing them to sign declarations attacking DIRECTV." Jt. Ltr. at 4. Defendants contend the discovery is relevant and likely to yield evidence that supports their defense "that consumers have not been deceived, but rather have selective memories and make untruthful claims to avoid

1  contractual fees." *Id.* Defendants further argue the FTC's motion should be denied because the
2  FTC is the wrong party to bring this motion: "If the consumers object, they must say so." *Id.*

3        As an initial matter, the Court finds the FTC, as a party to this consumer protection action,
4  may request a protective order regarding the consumers it seeks to protect. *See FTC v. AMG*
5  *Servs., Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013) ("FTC, as a party to this action, may bring this
6  motion for protective order . . . regarding the subpoenas issued to the nonparty consumers."); *In re*
7  *REMEC, Inc. Secs. Litig.*, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) (party may move for
8  a protective order regarding subpoena issued to a non-party); *see also Moon v. SCP Pool Corp.*,
9  232 F.R.D. 633, 636 (C.D. Cal. 2005) ("A party cannot object to a subpoena duces tecum served
10 on a nonparty, but rather, must seek a protective order or make a motion to quash."); *EEOC v.*
11 *Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (pursuant to Rule 26(c), plaintiff federal
12 agency may move to quash nonparty subpoenas).

13       Having reviewed the parties' positions, the Court finds it unnecessary to burden the
14 consumer declarants with Defendants' requests. First, the consumer declarant subpoenas impose
15 potentially substantial burdens on private citizens, including the time and expense of collecting
16 responsive documents and preparing and testifying at the depositions, as well as the cost of
17 retaining legal counsel to assist with this response.

18       Second, it is not clear that the subpoenas are proportional to the needs of this case. While
19 the scope of relevancy is broad for discovery purposes, permissible discovery from nonparties is
20 narrower than that permitted from parties to the action. *Dart Indus. Co. v. Westwood Chemical*
21 *Co.*, 649 F.2d 646, 649-50 (9th Cir. 1980) ("[T]he word 'non-party' serves as a constant reminder
22 of the reasons for the limitations that characterize 'third-party' discovery." (citations omitted)).
23 The Ninth Circuit "does not favor unnecessarily burdening nonparties with discovery requests,
24 and, as a result, [n]on-parties deserve extra protection from the courts." *Robert Half Int'l Inc. v.*
25 *Ainsworth*, 2015 WL 4662429, at *4 (S.D. Cal. Aug. 6, 2015) (citations and quotations omitted).

26       Defendants argue they have a right to conduct discovery of consumers who have claimed
27 to have been deceived. Jt. Ltr. at 5. They argue they will show "that consumers who claimed not
28 to have seen or understood certain disclosures, in fact often fully knew all the material terms at the

time they subscribed. Thus, depositions like these are important for DIRECTV's defenses and may strike at the heart of one pillar of the FTC's case." *Id.* at 6. However, these seven consumers provided the FTC with sworn declarations in 2013 and 2014 as part of the agency's investigation of Defendants, before the FTC filed its current case. The FTC has already produced these declarations to Defendants, and there is no indication it intends to offer them in support of its Complaint or to call any of the consumer declarants as witnesses at trial. *Id.* at 2. Moreover, Defendants do not deny that, despite the FTC's requests, they have not yet produced complaints that consumers submitted directly to DIRECTV. *Id.* at 2, 6. As the FTC's case focuses on potentially millions of consumer complaints, many of which are in Defendants' possession, the Court finds Defendants have failed to show that information obtained from these seven declarants, especially when compared to these other sources of consumer complaints available from the parties themselves, outweighs the potential burden to the declarants as nonparties.

Third, in looking at the document requests propounded by Defendants, the requested information appears to be, at least in part, already in Defendants' possession. Document Request No. 2 seeks "All COMMUNICATIONS and DOCUMENTS with DIRECTV about your account(s)." *Id.*, Exs. A-G. Document Request No. 4 seeks "All records of billings by and payments to DIRECTV." *Id.* Defendants fail to show why they cannot obtain this information from their own records rather than imposing the burden of production on nonparties. Document Request No. 5 is of marginal relevance at best; it seeks "All records of any subscriptions to competitive TV services." *Id.* Defendants argue this request "can show whether the consumers understood similar contracts, or whether the consumers had motives for complaining." Jt. Ltr. at 6. However, the FTC does not need to establish that consumers were actually deceived. *See FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1073 (C.D. Cal. 2012) ("To establish a section 5 violation, proof of actual deception is unnecessary; it only requires a showing that misrepresentations possess a tendency to deceive.").

The two remaining requests could be relevant. Document Request No. 1 seeks "All COMMUNICATIONS and DOCUMENTS with the FTC including, but not limited to, draft declarations." Jt. Ltr., Exs. A-G. Document Request No. 3 seeks "All COMMUNICATIONS and

7

DOCUMENTS with any state AG, BBB or other regulatory agency." *Id.* But at this stage in the litigation, where Defendants have not yet produced complaints that consumers submitted directly to them, the Court finds Defendants have failed to show it is necessary to burden nonparties with such requests. *See* Fed. R. Civ. P. 26(b)(1) (the importance of discovery in resolving case issues and the relationship of the burden to the benefit of discovery are two factors that define proportionality).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the FTC's request for a protective order. The consumer declarants do not need to respond to Defendants' November 6, 2015 subpoenas. If, after the pleadings are settled and the parties have had the opportunity to engage in further discovery, Defendants maintain discovery from nonparties is still necessary, the parties shall meet and confer in compliance with the undersigned's Discovery Standing Order.

**IT IS SO ORDERED.**

Dated: December 9, 2015

MARIA-ELENA JAMES
United States Magistrate Judge