```
1                                          Pages 1 - 19

2                  UNITED STATES DISTRICT COURT

3                 NORTHERN DISTRICT OF CALIFORNIA

4    Before The Honorable Magistrate Judge Maria-Elena James

5    FEDERAL TRADE COMMISSION,     Case No. 3:15-01129-HSG(MEJ)

6         Plaintiff,

7       v.

8    DIRECTV, a corporation,
     and DIRECTV, LLC, a limited
9    liability company,

10        Defendants.

11   _____/
                                   San Francisco, California
12                                 Friday, January 8, 2016

13            TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
              ELECTRONIC SOUND RECORDING - FTR 4:10-4:34
14

15   APPEARANCES:

16   For Plaintiff:
                         ERIC DAVID EDMONDSON, ESQ.
17                       JACOB ADAM SNOW, ESQ.
                         BORIS YANKILOVICH, ESQ.
18                       Federal Trade Commission
                         901 Market Street, Suite 570
19                       San Francisco, CA 94103
                         (Appearing Telephonically)
20

21   For Defendants:

22                       CHAD SAMUEL HUMMEL, ESQ.
                         Sidley Austin LLP
23                       1999 Avenue of the Stars, 17th Floor
                         Los Angeles, CA 90067
24                       (Appearing Telephonically)

25   APPEARANCES CONTINUED ON FOLLOWING PAGE:
```

**APPEARANCES (CONTINUED):**

For Defendants:

    **CLAYTON S. FRIEDMAN, ESQ.**
    **MICHAEL YAGHI, ESQ.**
    Sidley Austin LLP
    695 Town Center Drive, Suite 530
    Costa Mesa, CA 92626
    (Appearing Telephonically)

    **RYAN M. SANDROCK, ESQ.**
    Sidley Austin, LLP
    555 California Street, Suite 2000
    San Francisco, CA 94104
    **(Appearing Telephonically)**

For Non-Party Paula Selis:

    **TODD RICHARD BOWERS, SENIOR COUNSEL**
    **AMY CHIA-CHI TENG, ASSISTANT ATTORNEY GENERAL**
    Washington Attorney General's Office
    800 Fifth Avenue, Suite 2000
    Seattle, WA 98104-3188
    **(Appearing Telephonically)**

*Transcribed by Kelly Polvi, Contract Transcriber, utilizing court reporting and transcription hardware and software.*

| | |
|---|---|
| 1 | **FRIDAY, JANUARY 8, 2016**                                              **4:10 P.M.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  This is in civil action 15-1129, |
| 5 | Federal Trade Commission versus DIRECTV, Inc., et al., the |
| 6 | Honorable Maria-Elena James presiding. |
| 7 | Counsel, please state your appearances for the record. |
| 8 | **MR. EDMONDSON:**  Eric Edmondson for the Federal Trade |
| 9 | Commission, and I'm joined by Jacob Snow and Boris Yankilovich. |
| 10 | **THE COURT:**  I'm sorry, can I have that name again? |
| 11 | Could I have your name again? |
| 12 | **MR. EDMONDSON:**  First name -- |
| 13 | My name is Eric Edmondson. |
| 14 | **THE COURT:**  Uh-huh; okay. |
| 15 | **MR. EDMONDSON:**  And I'm joined by my colleagues |
| 16 | Jacob Snow and Boris Yankilovich. |
| 17 | **THE CLERK:**  Was it Jacob, J-a-c-o-b? |
| 18 | **MR. HUMMEL:**  Good afternoon.  This is Chad Hummel. |
| 19 | **MR. EDMONDSON:**  Jacob is J-a-c-o-b, Snow, S-n-o-w. |
| 20 | **THE CLERK:**  Thank you. |
| 21 | All right.  Go ahead. |
| 22 | **THE COURT:**  And Mr. Hummel. |
| 23 | **MR. HUMMEL:**  This is Chad Hummel for defendant DIRECTV, |
| 24 | and I'm joined by my partners Clay Friedman, Michael Yaghi, |
| 25 | Y-a-g-h-i, and I believe Ryan Sandrock may be on the phone as |

1   well.

2   **MR. SANDROCK:** Yes, I am.

3   **THE COURT:** All right, counsel, this is --

4   **MR. BOWERS:** And for the record, my name is Todd Bowers.
5   B as in boy, o-w-e-r-s. I'm a senior counsel with the
6   Washington State Attorney General's Office appearing on behalf
7   of the non-party, Ms. Paula Selis.

8   And with me today is my co-counsel, Amy Teng, T-e-n-g,
9   also an Assistant Attorney General.

10  **THE COURT:** Okay. I have read -- this is Judge James. I
11  have read the 5-page letter, counsel, and the declaration of
12  Ms. Selis, and I've read the order granting and denying in part
13  plaintiff's motion to strike the defendant's affirmative
14  defenses.

15  I understand at this point that there's been a summary
16  judgment motion filed and the defendants, in response to the
17  summary judgment motion, filed this declaration by Ms. Selis to
18  support -- I'm not sure what part of the summary judgment
19  motion.

20  And maybe you can -- the opposition, maybe you can clear
21  that up.

22  **MR. EDMONDSON:** Judge James, this is Eric Edmondson for
23  the Federal Trade Commission.

24  The motion for partial summary judgment was filed by
25  DIRECTV, and the Federal Trade Commission filed an opposition

1  to DIRECTV's summary judgment motion. And in support of the
2  FTC's opposition, we filed Ms. Selis's declaration.
3      **THE COURT**: Yes, I understand that. But my question
4  is -- I've read Ms. Selis's declaration, and it seems to be
5  about her participation in the state law settlement confer- --
6  I mean, settlements.
7      Is that correct?
8      **MR. EDMONDSON**: Yes.
9      **THE COURT**: Agreements. Right?
10     Are those public?
11     **MR. EDMONDSON**: They are.
12     **THE COURT**: Okay. So what was the purpose of filing her
13 declaration? I haven't read the -- I haven't had time to read
14 your opposition, so I need to know for what -- I mean, she
15 appears to be interpreting some of the law and some of the
16 parameters of the settlement, but I don't understand what the
17 purpose of filing her declaration -- what she added to your
18 opposition that someone reading the judgments couldn't have --
19 they couldn't have deciphered.
20     **MR. EDMONDSON**: Okay. Well, Judge James, DIRECTV filed a
21 declaration of one of their attorneys, Clay Friedman, in
22 support of their motion for partial summary judgment. And
23 there were representations made in that declaration about the
24 parameters and effect of the multi-state settlement.
25     As DIRECTV maintains, it -- DIRECTV maintains that the

1     multi-state settlement should preclude the Federal Trade
2     Commission from bringing the instant action.  And the Federal
3     Trade Commission filed Ms. Selis's declaration to authenticate
4     the multi-state settlement and point out that the multi-state
5     settlement does not preclude -- as a matter -- as stated in the
6     settlement, it doesn't preclude actions under federal law.
7          And that was the purpose of the FTC including Ms. Selis's
8     declaration in our filing.
9          **THE COURT**:  So was Mr. Friedman deposed by you?
10         **MR. EDMONDSON**:  No, Your Honor, we've not deposed
11    Mr. Friedman.
12         **THE COURT**:  All right.  And Mr. Friedman's declaration
13    was to give an interpretation of --
14         Was he involved in the settlements?
15         **MR. HUMMEL**:  Your Honor, this is Chad Hummel for DIRECTV.
16         Can you hear me okay?  I'm having (indiscernible) --
17         **THE COURT**:  Yes, I can hear you.
18         **MR. HUMMEL**:  -- probably because I'm on a cell phone.
19         All right.  I represent DIRECTV.  And Mr. Friedman is on
20    the line as well.
21         Yes, Mr. Friedman was the lead counsel for DIRECTV in the
22    context of negotiating, in 2010, the multi-state settlement
23    agreement, including the agreement with the State of Washington
24    on which Ms. Selis was the lead attorney.
25         The purpose of filing Mr. Friedman's declaration was not

1    to demonstrate that as a matter of law the multi-states have a
2    preclusive effect, but rather to demonstrate two things:  One,
3    for purposes of this limited partial summary judgment motion --
4    which was only on the FTC's claims that DIRECTV's online
5    web-based subscription process violated ROSCA -- that's the
6    Restore Online Shopper's Confidence Act, which requires that
7    the terms of a negative options sale program be clearly and
8    conspicuously disclosed.
9         "Clear and conspicuous" merely means that consumers can
10   see and understand the terms of the deal.
11        In 2010, that very issue -- the clear and conspicuous
12   nature -- not ROSCA, but -- it wasn't in effect, but whether
13   the terms of the negative option were clearly and conspicuously
14   disclosed to consumers was one of the issues that was resolved
15   and settled by virtue of the multi-state.
16        And it's our contention, Your Honor, that the FTC, which
17   was knowledgeable about the negotiations, invited to
18   participated in the negotiations, ultimately declined to
19   formally join, but, as can you see from the papers, there
20   apparently was a common prosecutorial interest in this issue.
21        We filed a declaration of Mr. Friedman to say, "Look, 50
22   states and the District of Columbia believed that the remedy
23   proposed by the multi-state agreement and ultimately adopted by
24   those states sufficiently cured any concern about whether the
25   disclosures were clear and conspicuous.

1           That's the issue.  Not as a legal matter, but as a matter
2    of evidence of (indiscernible) value that 50 states have looked
3    at this and decided yes, the disclosures, as being made by
4    DIRECTV going forward, will be clear and conspicuous.
5           That's the reason, essentially, that we filed
6    Mr. Friedman's declaration.
7           Ms. Selis's declaration now comes in and says, "Well --
8           If I understand, there are two major things.  One is
9    (indiscernible) legal effect, which we weren't offering it for
10   that anyway, and two (indiscernible) you say trying to
11   interpret some area.
12          But the reason we wanted to depose Ms. Selis
13   (indiscernible) other state's attorney general's
14   representatives who were involved in the multi-state, is to
15   demonstrate that these issues were covered, these issues were
16   discussed.
17          We think they were discussed between the FTC and the
18   states and that the FTC actually was involved in saying, "These
19   states covered this issue with respect to DIRECTV
20   (indiscernible) and we'll look at other issues."
21          And Mr. Friedman will ultimately, in the case, say he was
22   told by the FTC, "We're going to cover other issues."
23          And for that reason we think the defenses of waiver,
24   estoppel, latches apply because the FTC waited five years, sat
25   on their hands, did nothing, when these issues have been taken

1     care of by the multi-state.
2             That puts the negotiators of the multi-state, including
3     Ms. Selis, at issue in this case.  And we think the
4     (indiscernible) govern and (indiscernible) that Judge James
5     agree is that by denying these (indiscernible) in respect as to
6     those equitable defenses, the motion to strike.
7             Maybe that went on too long, but I hope that answered
8     your question.
9             **THE COURT**:  No.  Okay.
10            And Mr. Edmondson, you placed this -- I mean, just from a
11    commonsense standpoint you've put in a declaration by your
12    witness.  On what basis should I disallow them to depose her
13    based on this stuff that she's put in her declaration?
14            **MR. EDMONDSON**:  Okay.  (Indiscernible) Your Honor, as
15    explained in the letter brief, the only references that DIRECTV
16    makes to the -- to the multi-state and to Mr. Friedman's
17    declaration referencing the multi-state are for the purpose of
18    arguing preclusion, not latches, waiver, or estoppel.
19            After we put Ms. Selis's declaration into evidence, the
20    Court ruled that the preclusion defenses -- after the Court
21    struck the preclusion defenses, after we put Ms. Selis's
22    declaration into evidence, and therefore --
23            **THE COURT**:  You struck them in the -- denying the motion
24    to strike the defense's affirmative defenses?  That order?  Is
25    that the one you're talking about?

1 **MR. EDMONDSON:** Yes. Precisely. The judge struck three
2 affirmative defenses and allowed three affirmative defenses to
3 remain.
4     The Court allowed the affirmative defenses of latches,
5 waiver, and estoppel to remain, and the Court struck claim
6 preclusion and issue preclusion and another defense titled
7 "previous nationwide settlement."
8     And Ms. Selis's declaration went to those issues and
9 those issues alone.
10 **THE COURT:** "Those issues" being all the ones you say
11 that have been stricken?
12 **MR. EDMONDSON:** Yes. Exactly.
13 **THE COURT:** Then Mr. Hummel -- how are -- Mr. -- who am I
14 speaking to? Mr. Friedman or Mr. Hummel? Previously.
15 **MR. HUMMEL:** This is Chad Hummel.
16 **THE COURT:** Okay. Mr. Hummel. I'm sorry. I'm getting
17 confused here. I've got so many names down.
18     How does -- what, in her declaration, goes to those two
19 remaining defenses? Because you were talking about the
20 preclusion.
21 **MR. HUMMEL:** Your Honor, that's -- it's simply a
22 characterization of the status in the record that
23 (indiscernible) argue that what we're wanting Ms. Selis's
24 deposition on is only the defenses that we asserted.
25     We wanted Ms. Selis's deposition not simply for purposes

1     of her declaration, which is -- I understand Your Honor
2     (indiscernible.)
3         It's not correct that her testimony relates only to the
4     stricken defenses.
5         Which by the way, if you carefully read Judge James's
6     order, (indiscernible) he would say if later discovery proves
7     (indiscernible) support these defenses, you can raise them
8     again.
9         It seems to me to say you can take discovery, which is a
10    broad standard, and if you can't meet the standard you can't
11    re-plead it.
12        But Your Honor, Ms. Selis's testimony, in addition to the
13    issues on summary judgment now, her testimony relates to a
14    defense in the case that our conduct, our advertising, does not
15    violate Section 5 and does not, in fact, violate ROSCA because
16    she would have to say, in settling the case, that the state's
17    believe that our disclosures were clear and conspicuous.
18        That's not waiver, estoppel, or latches.  It
19    (indiscernible) claim to those defenses, but it's a broader
20    (indiscernible) to defend that her testimony and the fact of
21    the settlement is probative that all the attorney generals
22    throughout the United States believe that our conduct, as a
23    result of the MSA settlement, complied with a standard that's
24    identical to what the FTC is now contending has been violated.
25        So to characterize her testimony as relevant only

1  (indiscernible) issues of preclusion and this -- what I call
2  the (indiscernible) defense of the previous nationwide
3  settlement is (indiscernible) inaccurate.
4      **THE COURT:**  Okay.  Counsel, this may sound naive of me,
5  but what -- of what import is her opinion, or even them on this
6  case?
7      I mean, if they all believed it, how is that a defense to
8  you?
9      **MR. HUMMEL:**  Her belief?  Her belief was suddenly the law
10 enforcement officials in 50 states who settled this case
11 believed that -- they set forth a disclosure (indiscernible)
12 reaching a multi-state settlement.  DIRECTV complied.  No state
13 attorney general thereafter enforced or brought any action
14 saying that DIRECTV violated the terms of that agreement.
15     That is probative and substantive evidence that these law
16 enforcement officials did not believe DIRECTV was engaging in
17 deceptive conduct on the very issues that the FTC is now
18 pursuing.
19     In other words, communication with DIRECTV's counsel --
20 which we're going to put into evidence -- that (indiscernible)
21 we were told that the FTC was looking at other issues.
22     Five years later, the FTC turns around and sues on these
23 very issues.
24     We believe that evidence, and the communication that the
25 AG's had with the FTC, could support the remaining affirmative

1  defenses and be probative of (indiscernible.)
2      And the fact that she put in a declaration itself
3  (indiscernible) tenders her (indiscernible) specific
4  examination on that issue but the examination is far broader.
5      And, Your Honor, I would say this -- one final thing.
6  It's in the letter.
7      It is this (indiscernible) this deposition and presumably
8  others now.  But the FTC doesn't want (indiscernible) inquiry
9  into this issue of the common interest privilege that they're
10 asserting.
11     In order in the Ninth Circuit for two parties to assert a
12 common interest given the FTC (indiscernible) the AG's, they
13 have to allege that they were engaged in a common prosecutorial
14 effort.
15     That may give rise to inferences that support our
16 defenses of estoppel, latches, and waiver, as well as defenses
17 of preclusion.
18     We don't know.  Because we haven't been allowed to
19 discover yet.  And that's what we want to go forward with with
20 Ms. Selis.
21     **THE COURT:**  All right.
22     **MR. BOWERS:**  Your Honor, this is Mr. Bowers.  I wonder --
23 I represent Ms. Selis.  I wonder if I might make two points.
24     **THE COURT:**  Okay.
25     **MR. BOWERS:**  Your Honor, the first point is if the Court

1   were to look at the summary judgment motion that had been
2   filed, the multi-state agreements that we're discussing here
3   represent a very small portion of those -- of those summary
4   judgment motions.  That they're really a pretty small part of
5   those.
6       They were -- Ms. Selis's declaration only speaks,
7   Your Honor, to the preclusion defenses that have been stricken.
8       As a result -- and really, her declaration -- and you've
9   read it, Your Honor, it's very short, it's very
10  factually-based.  Essentially, all it does is authenticate and
11  sponsor the multi-state agreement that DIRECTV signed with the
12  State of Washington.  That's really all it does.
13      And so it is -- now that the Court -- now that
14  Judge Gilliam has stricken the preclusion defenses, her
15  declaration is moot.  It is irrelevant.
16      To the extent that DirecTelevision wants to make the
17  argument that their actions have been in compliance with the --
18  with the multi-state agreements, they can make that argument,
19  Your Honor, based on the plain language of those settlement
20  agreements.  You don't need an attorney to do that.
21      Which leads me to my second point, Your Honor, which is
22  to the extent they want to ask Ms. Selis questions about, you
23  know, has DIRECTV's market and DIRECTV's marketing practices
24  complied with the multi-state agreement, do they comply with
25  state law, do they comply with federal law, that's her work

1    product, Your Honor.  They can't ask her those questions.

2           And so for those two reasons, Your Honor -- those are the

3    two primary points that I wanted to make on Ms. Selis's behalf.

4           I'd be happy to answer any other questions you might

5    have.

6           **THE COURT**:  All right.  Counsel, this is what I'm going

7    to do:  I'm going to indicate that DIRECTV be allowed to depose

8    Ms. Selis in writing.  Because I know they're treading on

9    attorney-client privileges, information, and back and forth.

10          So I'm going to allow them to do a written deposition of

11   her.

12          And this is without prejudice to DIRECTV's returning back

13   to this Court indicating why it has to be done in person.

14          But under the circumstances, and given the position of

15   her declaration and the way this case is unfolding, I'm going

16   to allow her to be deposed, but in writing.

17          So counsel, how many -- how much -- how many questions do

18   you have of her?  Can you give me an estimation?

19          **MR. HUMMEL**:  Your Honor, this is Chad Hummel.

20          So what you're saying is you'll allow a deposition on

21   written questions?

22          **THE COURT**:  In writing.  In other words, you'll be

23   allowed to give her written questions.

24          **MR. HUMMEL**:  Yes.  I understand.  I've done depositions

25   on written questions before.

1    And I don't know, off the top of my head, Your Honor, I
2    imagine it's in the -- it's in the (indiscernible) range in
3    terms of the questions that we would ask her.
4        **THE COURT:**  Okay.  So I'll indicate that you can ask her
5    up to 30 questions at this point.  A written deposition.  In
6    written form.  And this is without --
7        **MR. HUMMEL:**  (Indiscernible) Your Honor (indiscernible)?
8        **THE COURT:**  What's that?  I didn't hear you.
9        **MR. HUMMEL:**  In terms of the schedule, what do you
10   suggest?
11       **THE COURT:**  What's the time frame?  What time frame are
12   we up against?
13       **MR. HUMMEL:**  Well, the urgent -- the immediate deadline
14   in the case is -- the 25th of January is our reply brief in
15   support of our motion for partial summary judgment.
16       So if we could have answers on no later than -- I don't
17   have a calendar in front of me.  I apologize; I'm on a cell
18   phone.  No later than, say, a week from prob- -- we were going
19   to take the deposition on the 13th.  That is the proposed date.
20   (Indiscernible) a Wednesday.
21       If we could have the written -- written answers by
22   Friday, if we submitted the questions Monday close of business,
23   and had sworn answers by Friday, that would be acceptable, Your
24   Honor.
25       **THE COURT:**  Counsel?  Mr. Edmond- -- I'm sorry, not

1       Mr. Edmondson.
2            **THE CLERK**:  Bowers.
3            **THE COURT**:  Mr. Bowers, does that give you enough time?
4            **MR. BOWERS**:  I'm not sure.  I hope so, Your Honor.
5            Ms. Selis has recently retired from our office and so
6       she's not here for me to ask.
7            I do know that she did have some things next week.  We
8       were able to clear the 13th.
9            I fervently hope that we could turn those around, if we
10      can get them Monday morning by 9:00 A.M.
11           **MR. HUMMEL**:  Your Honor, here's my problem.  This is Chad
12      Hummel.  I hate to bring this up.
13           My wife was due to deliver (indiscernible) child on
14      December 31.  She's now 8 days overdue.  It's likely that I'm
15      going to have this baby (indiscernible) Monday, Tuesday.
16           (Indiscernible) but I really can't be there
17      (indiscernible.)
18           **THE COURT**:  So what day are you saying?  I'm sorry, you
19      fell out at the last part of that.  I lost the last part of
20      your statement.
21           **MR. HUMMEL**:  I'm sorry.  They wanted them first thing
22      Monday morning; I propose close of business Monday, if not
23      Friday at 4:30.  So if we got them to them close of business
24      Monday, deposition on written questions, and we have answers
25      (indiscernible) they're sufficient we could bring them to

1  Your Honor, if we have them by (indiscernible) Friday, that
2  would give us enough time.
3         **THE COURT:**  All right.
4         So she had the 13th clear, counsel.  She should be able
5  to answer 30 questions by -- in one day.
6         So I'm going to order that you get them done by the close
7  of business Friday.
8         Okay.  So I'm going to give you Monday -- till Monday
9  evening.
10        Mr. Hummel will have the questions to Mr. --
11        **MR. BOWERS:**  Bowers, Your Honor.
12        **THE COURT:**  I'm sorry.  I've got to read down this list
13 like the cast of *Gone With the Wind* to figure out who I'm
14 talking to.
15        Mr. Bowers.
16        And you can send it also to Mr. Edmondson.  I assume
17 Mr. Edmondson wants to be in the loop.
18        Is that correct?
19        **MR. EDMONDSON:**  Yes, Your Honor.  Thank you.
20        **THE COURT:**  Okay.  So if you will send a copy to
21 Mr. Bowers and Mr. Edmondson by 5:00 o'clock on Monday, that
22 would be January 11th, and --
23        **THE CLERK:**  I think it's the 12th, Judge.
24        **THE COURT:**  Is it?  Monday's the 11th.
25        We've got a calendar; we still can't agree on a date.

1           Okay.  Monday the 11th at 5:00 o'clock.
2           And you will have -- Ms. Selis will have her responses to
3      counsel by the 15th -- Friday the 15th, at 5:00.
4           **MR. BOWERS:**  That's fine, Your Honor.
5           **THE COURT:**  Okay?
6           **MR. HUMMEL:**  Your Honor, thank you very much.
7           **THE COURT:**  You're welcome.
8           **MR. HUMMEL:**  I appreciate your time.
9           **THE COURT:**  All right.  Bye-bye.
10          **MR. HUMMEL:**  Have a good weekend.
11          **THE COURT:**  You too.  Good luck with the baby.
12          **UNIDENTIFIED SPEAKER:**  Thank you.
13          **THE CLERK:**  Thank you.
14          **UNIDENTIFIED SPEAKER:**  Thank you --
15          **THE CLERK:**  I'm going to disconnect.
16          **UNIDENTIFIED SPEAKER:**  -- Your Honor.
17          **THE COURT:**  Mm-hm.
18          (Proceedings adjourned at 4:34 P.M.)
19
20
21
22
23
24
25

**CERTIFICATE OF CONTRACT TRANSCRIBER**

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated February 3, 2016.

_____
Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*
*(503) 779-7406; kpolvi@comcast.net*