UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**DIRECTV, a corporation,**<br><br>and<br><br>**DIRECTV, LLC, a limited liability company,**<br><br>Defendants. | Case No. 3:15-cv-01129 HSG<br><br>Hon. Haywood S. Gilliam, Jr., Presiding<br><br>Hon. Maria-Elena James, Referral |

Dear Judge James:

      Counsel for the parties met and conferred in person on June 15, 2016, prior to filing this letter.  Because we will be meeting again in person on July 25, 2016, pursuant to the Court's order of July 20, 2016, we ask that the Court advise us whether this additional letter brief should be addressed by the parties at that time.

/s/ Eric D. Edmondson                           /s/ Chad S. Hummel
Counsel for the Federal Trade Commission     Counsel for DIRECTV and DIRECTV, LLC

<u>Attestation pursuant to Local Rule 5.1(i)(3)</u>
    Pursuant to Local Rule 5.1(i)(3), I attest that concurrence in the filing of this document has been obtained from all Signatories to this document.

                                         /s/ Eric D. Edmondson
                                         Counsel for the Federal Trade Commission

## NATURE OF DISPUTE

The FTC seeks to depose DIRECTV Vice President and Deputy General Counsel Takehiko (Ted) Suzuki concerning DIRECTV's advertising and marketing disclosures compliance program.

## THE FEDERAL TRADE COMMISSION'S POSITION

DIRECTV has refused the FTC's request to produce Mr. Suzuki for a deposition on facts relevant to DIRECTV's affirmative defenses of laches, estoppel and waiver.  DIRECTV has not provided a cognizable basis for refusing to produce Mr. Suzuki, nor can it.

DIRECTV has alleged as the basis for its affirmative defenses that the FTC declined to join the negotiated resolution to DIRECTV's violations of consumer protections laws of 49 states and the District of Columbia known as the Multistate Agreement ("MSA"). DIRECTV claims that it was prejudiced by the FTC not objecting to the adequacy of the MSA and allowing DIRECTV to "roll out a national compliance program"[1] based on the MSA. These claims beg the question of whether DIRECTV actually has complied with the MSA, because failure to do so would moot DIRECTV's affirmative defenses.

Ted Suzuki developed and oversaw DIRECTV's MSA compliance program. He co-authored recently-produced compliance documents, including DIRECTV's "advertising and marketing disclosures compliance manual" and a presentation titled "DIRECTV Multistate Settlement: An Overview." DIRECTV advertising executives have testified that they relied on Mr. Suzuki and his legal team to ensure that DIRECTV's ads were compliant with the MSA. Accordingly, Mr. Suzuki's testimony will be essential to determining what steps DIRECTV took to comply with the disclosure requirements of the MSA, the FTC Act and the Restore Online Shoppers Confidence Act ("ROSCA").

**A. Mr. Suzuki's testimony is highly relevant.**

DIRECTV has alleged in support of its affirmative defenses of laches, waiver and estoppel that "the FTC was invited to participate in the negotiation and resolution" of the advertising disclosure issues covered by the MSA but declined, and that, based on the FTC's silence, DIRECTV "relied on the requirements of [MSA] in designing its advertising disclosures."[2] DIRECTV's allegation suggests that compliance with the requirements of the MSA is somehow different from the requirements for complying with the Section 5 of the FTC Act and Sections 3 and 4 of ROSCA.

Mr. Suzuki designed and oversaw DIRECTV's advertising and marketing compliance program.  He co-authored DIRECTV's compliance manual as well as a presentation on the disclosure requirement of the MSA.  His testimony is relevant to determining whether DIRECTV can substantiate its affirmative defenses, including whether DIRECTV's compliance manual was designed to meet the requirements of the FTC Act and ROSCA.  He will also be able to explain what steps DIRECTV took to ensure that its advertisements and marketing materials complied with the MSA.  Finally, several DIRECTV executives – including Paul Guyardo, Jon Gieselman, Karen Leever, and Brad Bentley – testified that they relied on Mr. Suzuki or his legal team to ensure that DIRECTV's advertising and marketing materials were legally compliant.

**B. The testimony the FTC's seeks in not privileged.**

The information the FTC seeks from Mr. Suzuki is not *per se* privileged, and to the extent that particular inquiries infringe on genuinely privileged information, DIRECTV's counsel may

---

[1] Deposition Transcript of Clayton Friedman ("Friedman Dep. Tr.") at 87:20.
[2] *See* Affirmative defenses 4, 5 and 6 in Defendants' DIRECTV and DIRECTV LLC's Second Amended Answer (Dkt. 93).

1

instruct Mr. Suzuki not to answer those questions. What counsel may not do, however, is substitute a non-lawyer with no personal knowledge of DIRECTV's MSA compliance efforts for Mr. Suzuki, the witness the FTC has chosen to depose.[3] It is clear from the record that many of the documents central to the proposed deposition are simply not privileged. The advertising and marketing compliance manual and related "compliance checklist" the FTC intends to question Mr. Suzuki about are widely disseminated documents clearly intended as statements of DIRECTV policy, not legal advice. The Multistate Agreement is a public document. Mr. Suzuki should be able to answer factual questions about that document, and explain DIRECTV's efforts to comply with the MSA, without revealing privileged information. Any privilege that may have attached to the internal DIRECTV presentation summarizing the requirements of the MSA was waived when DIRECTV produced the document to the FTC.

Moreover, DIRECTV has waived privilege with respect to MSA compliance by putting it at the center of its affirmative defenses. Courts have long recognized that a party cannot use legal advice as both a sword and a shield. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991). When parties attempt to use legal advice both offensively and defensively, courts may find that the privilege has been implicitly waived. *Id*. DIRECTV's repeated claim that its compliance program ensured that its advertising was legally compliant (a defensive use) combined with its affirmative defenses related to the program (an offensive use), effectively waives any claim it may have had that its advertising review and approval process protects as privileged all communications between its marketing executives and in-house lawyers.

### C. The *Shelton* factors do not preclude the FTC from taking Mr. Suzuki's deposition.

DIRECTV incorrectly assumes that because *Shelton* involved in-house counsel, the additional protections described in that case would apply to Mr. Suzuki. It is well-established that the *Shelton* factors were intended to cover only to opposing litigation counsel in the matter at hand (whether in-house or outside counsel). *See, e.g., Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) (holding that *Shelton* did not apply to attorney being deposed in one matter about representation in another matter); *Luster v. Schafer,* No. 08–cv–02399–PAB–KMT, 2009 WL 2219255, at *2 (D.Colo. July 23, 2009) (*Shelton* factors "only apply to depositions of trial counsel or counsel directly representing the party in the pending litigation."). Mr. Suzuki is not acting as litigation counsel in this matter – he has not entered an appearance, taken a deposition, signed discovery responses or in any other way acted as such.[4] The purpose of the *Shelton* factors was to protect litigation counsel from inadvertently revealing their litigation strategy or having to spend time preparing for a deposition instead of preparing their case. *See Pamida*, 281 F.3d  at 730*; Luster*, 2009 WL 2219255 at *2. These concerns are absent here, as Mr. Suzuki is not litigation counsel. The *Shelton* factors do not apply and the FTC need only show that Mr. Suzuki has information relevant to its claims. (*See* Section A above.)

---

[3] *See, e.g*., *Armada (Singapore) Pte Ltd v. Amcol Int'l Corp.*, No. 13 C 3455, 2016 WL 612852, at *1 (N.D. Ill. Feb. 16, 2016) ("Questions of privilege must be assessed on a question by question basis and cannot be resolved fungibly even before the deposition begins. Nor ought it be a valid objection to an otherwise permissible notice of deposition to say that the party seeking the deposition has or can get the same information elsewhere. Witnesses are not fungible, and thus the quality of the evidence each may provide can only be determined in retrospect.")

[4] DIRECTV incorrectly equates Mr. Suzuki with Mr. McKown, who this Court agreed should not be deposed. In contrast to Mr. Suzuki, Mr. McKown is an attorney of record for the FTC and is actively serving as litigation counsel in this matter.

**D. The FTC never agreed to waive its right to depose Mr. Suzuki.**

The FTC unequivocally rejects DIRECTV's assertion that it agreed to allow DIRECTV substitute Brad Bentley for Mr. Suzuki.[5] Mr. Bentley has no personal knowledge of DIRECTV's MSA compliance efforts and, in fact, has already testified that he relied on the legal department for compliance information. Mr. Bentley, who is a marketing executive, is simply not qualified to testify about DIRECTV's MSA compliance program. The Court should reject this bald attempt by DIRECTV to cherry pick fact witnesses for deposition.

**E. Conclusion**

For the foregoing reasons, the FTC respectfully requests that the Court order DIRECTV to produce Mr. Suzuki for deposition.

## DIRECTV'S POSITION

The Court should deny the FTC's motion to compel the deposition of DIRECTV's in-house counsel in charge of advertising review and litigation: (1) the FTC is reneging on a clear discovery agreement reached at a voluntary, privileged proffer session involving Mr. Suzuki in which, after speaking with Mr. Suzuki for hours about DIRECTV's privileged advertising review process, the FTC agreed to take a designee witness under Rule 30(b)(6) instead of Mr. Suzuki; (2) the Court's prior decision regarding the Ray McKown deposition (Dkt. 143) controls here and dictates denial of the FTC's motion; (3) the information the FTC claims to seek from Mr. Suzuki is almost all privileged or protected under the work product doctrine, and DIRECTV is not invoking an "advice of counsel" defense; (4) the FTC cannot meet its high burden under *Shelton* for overcoming the presumption against deposing opposing counsel; DIRECTV's marketing executive and 30(b)(6) representative can provide the same non-privileged testimony without the risk of impinging on protected advice or attorney thought processes.

## Background

In a good faith effort to resolve a discovery dispute with the FTC, DIRECTV proffered Mr. Suzuki to describe how all ads are reviewed and approved in the so-called RAP process. The parties agreed that the provision of information at the session on May 17 would not constitute a waiver of any privileges or be used in the case. Eric Edmondson, lead counsel for the FTC, and FTC attorney Sylvia Kundig interviewed Mr. Suzuki for several hours regarding DIRECTV's RAP process, Mr. Suzuki and his team's role in the process, and the maintenance of records of reviews or draft ads, among many other topics. After the proffer session, the FTC agreed that it would not require RAP materials to be produced or logged as they clearly are privileged and extremely voluminous. In addition, the FTC also agreed that it would forego the personal deposition of Mr. Suzuki if DIRECTV would produce a designee Rule 30(b)(6) witness on topics that the FTC would provide regarding DIRECTV's advertising and marketing disclosure compliance program.

DIRECTV confirmed this agreement with the FTC in an e-mail the next day.[6] Pursuant to the agreement, the FTC proposed two topics.[7] DIRECTV offered Brad Bentley, DIRECTV's

---

[5] Contrary to DIRECTV's version of events, the proffer session concerned draft advertisements contained in the company's "Fastrieve" document management system, not all draft advertisements. The FTC determined that the burden of producing potentially hundreds of thousands of draft advertisement contained in Fastrieve likely outweighed their probative value to this case and promised not to seek production of those documents. The FTC has honored this agreement.

[6] The relevant portions of the e-mail provided: "This email will confirm that, based on your informal interview of Ted Suzuki yesterday about DIRECTV's RAP policies and procedures, which was conducted under the settlement privilege and the protections of FRE Rule 408, and pursuant to an agreement that nothing said in the meeting would

3

Executive Vice President and Chief Marketing Officer, as a 30(b)(6) designee witness on these topics, a witness fully knowledgeable about the proposed topics. The matter was resolved. Inexplicably, and without reference to the prior agreement (witnessed by three DIRECTV counsel and confirmed in writing), the FTC then demanded that Mr. Suzuki appear for a personal deposition. The FTC subsequently withdrew Topics 7 and 8—arguing that a 30(b)(6) witness no longer worked because the topics had been withdrawn. The FTC then brought this Motion.

## Argument
### I.   The Discovery Agreement Should be Enforced.

DIRECTV had Brad Bentley ready to testify regarding 30(b)(6) Topics 7 and 8 and had reserved a date for his deposition. His testimony would have covered the same ground as the proposed deposition of Mr. Suzuki—any non-privileged information regarding policies, procedures, and practices designed to ensure compliance with legal requirements.

The FTC's conduct in issuing the notices indicated that it believed 30(b)(6) testimony would be sufficient. This Court endorsed this approach in its ruling allowing for a FTC 30(b)(6) designee witness in lieu of the FTC's Ray McKown. DIRECTV sought to compel the testimony of Mr. McKown regarding his communications on behalf of the FTC with DIRECTV's counsel regarding the MSA. Dkt. 143. Mr. McKown was the only one at the FTC with first-hand knowledge of those communications. The FTC—taking the opposite position it takes now—argued that 30(b)(6) testimony instead of Mr. McKown would suffice. This Court agreed, finding that "As Mr. McKown's communications with DIRECTV's counsel are relevant to the extent they were made on behalf of the FTC, the appropriate course is for DIRECTV to seek discovery about these communications from the FTC itself." Dkt. 145. That reasoning applies here: as Mr. Suzuki's conduct regarding compliance is relevant to the extent it shows *DIRECTV's* compliance, the appropriate course is for the FTC to seek discovery from DIRECTV itself. The fact that the FTC chose not to do so does not mean it gets Mr. Suzuki's deposition.

### II.  The Information Sought From Mr. Suzuki is Privileged.

The FTC concedes that how DIRECTV's attorneys advised business personnel regarding compliance with the MSA and other applicable law is privileged. There is no question that the attorney-client privilege bars testimony about Mr. Suzuki's legal advice with respect to advertisements, and the work product doctrine protects Mr. Suzuki's mental impressions. The FTC nevertheless makes two attempts to create exceptions to these protections.

---

constitute a waiver of the attorney–client privilege or DIRECTV's work product, the FTC will not require production of RAP materials and will not require that we log privileged communications within RAP. . . Finally, this will confirm that you will send us potential 30b6 topics, potentially in lieu of Mr. Suzuki's personal deposition which you noticed. Until we reach agreement on the scope of designee testimony, we will hold the agreed date of June 28, and may use that for the 30b6 if necessary. . . . Let me know if this does not accurately reflect our understandings."

[7] Topic 7: "DIRECTV's policies, procedures, and practices intended to ensure that the Company's advertisements and other forms of marketing . . . for direct-to-home digital television service that DIRECTV has advertised, marketed, promoted, sold, or otherwise offered to consumers in the United States conveys clearly and conspicuously to consumers" various terms of DIRECTV's offers." Topic 8: "DIRECTV's policies, procedures, and practices intended to ensure that the Company, in connection with transactions over the Internet for sale of the Service with a negative option feature."

<u>First</u>, the FTC says that the MSA is a public document and Mr. Suzuki should be able to answer factual questions about it. This is true, but any witness could answer factual questions about the MSA and there is no basis for burdening Mr. Suzuki with a deposition simply so he can read the terms of the MSA into the record. Of course, his interpretations of the MSA and advice regarding it are protected from disclosure.

<u>Second</u>, the FTC argues that DIRECTV is relying on an advice of counsel defense and thereby using the privilege as both "a sword and a shield." This is factually wrong. DIRECTV is not asserting "advice of counsel" as a defense. As DIRECTV has made clear in repeated pleadings, its defenses of waiver, estoppel, and laches (defenses as to which Judge Gilliam denied a motion to strike (Dkt. 88)) are based on *the FTC's conduct*. Specifically, the FTC unreasonably delayed for 5 years in initiating this action after it fully knew of the MSA and the manner of advertising disclosures dictated by it, engaged in affirmative misconduct in 2010 in misleading DIRECTV into believing that the FTC would not take action on issues resolved by the MSA (which are the very same disclosures at issue in this case), and failed to disclose its common interest prosecution of DIRECTV with the states. This FTC conduct, not the inner workings of DIRECTV's legal department, is what is at issue in this case. And the FTC has already deposed a 30(b)(6) witness (DIRECTV's outside counsel responsible for negotiating the MSA, Clayton Friedman) on the FTC's conduct and how DIRECTV reasonably relied on it in the context of the MSA and DIRECTV's subsequent compliance program.

### III.     The FTC Has Not Met the *Shelton* Factors for Deposing Opposing Counsel.

Finally, the FTC has never attempted to, and cannot, meet "its burden to overcome the strong presumption against deposing counsel during active litigation." Dkt. 143 at 2. As this Court has explained, *Shelton v. AMC,* 805 F.2d 1323 (8th Cir. 1986), provides that attorney depositions should be permitted only where the party seeking the deposition shows that (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. Dkt. 143 at 2.

As to the first factor alone, multiple other means exist to elicit discoverable information in this area and the FTC has already conceded as much by issuing the proposed 30(b)(6) topics. Certainly, the FTC has not demonstrated that no other means exist to obtain the requested discovery or "why it cannot seek the same information from [DIRECTV] through a Rule 30(b)(6) deposition." Dkt. 143 at 3. As to the second factor, the FTC's argument for relevance relies on the incorrect premise that DIRECTV is relying on an "advice of counsel" defense. Even assuming some relevance, however, the FTC cannot show that Mr. Suzuki's testimony is "crucial" to its preparation of the case because any non-privileged information is plainly obtainable from other sources.

The FTC's only argument in response is that Mr. Suzuki is not litigation counsel. This is wrong. He is, and his deposition could reveal litigation strategy in *this case.* The fact that he has not entered an appearance, taken a deposition, or signed discovery responses is not remarkable—most in-house counsel involved with litigation do not do these things. The FTC is therefore without a response to *Shelton* and its request should be denied.

5