UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, INC., et al.,<br><br>Defendants. | Case No. 15-cv-01129-HSG (MEJ)<br><br>**DISCOVERY ORDER**<br><br>Dkt. Nos. 158, 161, 165 |

## INTRODUCTION

Over eight days, Plaintiff Federal Trade Commission ("FTC") and Defendants DIRECTV and DIRECTV, LLC (collectively, "DIRECTV") filed four joint discovery dispute letters. *See* Dkt. Nos. 152, 155, 158, 161. Pursuant to the Court's July 20, 2015 Order (Dkt. No. 160), the parties met and conferred on those disputes at the courthouse on July 25, 2016. The parties successfully resolved two of their disputes, *see* Dkt. No. 164, and the Court held a hearing on the other disputes. Two days later, the parties filed a fifth discovery dispute letter, the subject of which the parties raised at the July 25 hearing. RIO Ltr., Dkt. No. 165. This Order considers the parties' three remaining discovery disputes regarding (1) the deposition of Michael Ostheimer (Ostheimer Ltr., Dkt. No. 158); (2) the deposition of Takehiko ("Ted") Suzuki (Suzuki Ltr., Dkt. No. 161); and (3) the scope of DIRECTV's RIO[1] production (RIO Ltr., Dkt. No. 165).

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[1] RIO is DIRECTV's customer notes system which contains entries that record consumer complaints. Dkt. No. 127 at 1.

proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts." *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1).

## DISCUSSION

### A.   Ostheimer Deposition

On June 22, 2015, DIRECTV served the FTC with a Rule 30(b)(6) Notice of Deposition, which included Topic No. 3: "The results of any and all research, surveys, or tests conducted by the FTC concerning DIRECTV'S advertising that the FTC contends has been or is deceptive." Ostheimer Ltr. at 2. On December 3, 2015, the Court granted DIRECTV's request to compel further responses to Topic No. 3, finding DIRECTV sought discoverable factual information (Dec.

3 Order at 8, Dkt. No. 81), and on June 9, 2016, DIRECTV deposed Michael Ostheimer, a staff attorney at the FTC and the FTC's 30(b)(6) designee. Ostheimer Ltr. at 1; *see also id.*, Ex. B ("Ostheimer Tr.") at 5:24-6:2.

DIRECTV argues the FTC continues to withhold basic facts about its investigations and the factual support for its claims. Ostheimer Ltr. at 1. Specifically, DIRECTV asserts the FTC has refused to reveal (1) the existence of any studies, surveys, or research conducted by the FTC on DIRECTV's ads that pre-date the filing of this lawsuit; (2) who at the FTC first performed "facial analyses" of DIRECTV's ads and when those analyses occurred; (3) all factual bases for the FTC's allegation that DIRECTV's ads were likely to deceive reasonable consumers; and (4) other than the ads, what DIRECTV documents support the FTC's claims. *Id.* In response, the FTC contends Mr. Ostheimer in fact provided responsive testimony to DIRECTV's questions and did not do so only when such testimony was subject to "proper privilege objections." *Id.* at 3.

Factual questions as to "whether there has been any fact gathering; who did it; when it was done; where it is reported, if at all; how it was conducted; what inquiry was made and of whom; why the inquiry has taken so long; and the like," *Ressler v. United States*, 2012 WL 3231002, at *3 (D. Colo. Aug. 6, 2012), do not reveal mental impressions or opinions that could be subject to privilege. DIRECTV is entitled to discover those facts. The FTC therefore shall respond to DIRECTV's factual questions, including factual questions regarding the *existence* of any pre-lawsuit studies, surveys, or research, and whether the FTC conducted such analyses before filing this action. That the documents themselves may be protected as attorney work product does not preclude DIRECTV from discovering the fact of their existence.[2] That said, DIRECTV cannot

---

[2] Similarly, at the hearing, the FTC argued that because the parties previously agreed not to produce any "preliminary work," it need not produce any studies, surveys, or research conducted prior to the filing of their Complaint. *See* Jt. Case Mgmt. Stmt., Dkt. No. 33. The Court is unpersuaded. The Joint Case Management Statement provides:

> [n]o party is required to preserve or produce in discovery . . . notes, drafts, written communications, data formulations or runs, or any database-related operations or other types of preliminary work created by, or for, expert witnesses or their staff; however, the protections against discovery contained in this paragraph shall not apply to any information or materials covered by Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).

inquire as to what facts the FTC Commissioners or other individuals considered or evaluated when deciding to initiate this action, as this would impermissibly reveal their evaluations of those materials. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 4750774, at *2 (S.D.N.Y. Aug. 11, 2015) ("[T]o the extent that Plaintiffs intend to ask whether [the investigator] considered certain documents or facts in preparing the Report, those questions would invariably reveal [the investigator's] mental impressions and personal beliefs and therefore run afoul of the work product doctrine." (internal quotations and citations omitted)).

DIRECTV requests the Court order the FTC to fully answer the questions listed in Exhibit A, which includes excerpts of the Ostheimer Deposition transcript (*see* Ostheimer Ltr. at 3 and Ex. A), but the Court finds that not all of the sought-after information in those questions is discoverable. By way of example, questions in Exhibit A such as those appearing at page/line 18:19-23 ("what facts the commissioners considered in determining . . .") and 28:18-29:22 ("what facts did the commissioners consider in voting . . .") seek undiscoverable material, whereas questions such as those appearing at page/line 59:4-6 ("Did the Commission have any consumer surveys available to it when it made its decision . . ."), and 136:3-7 ("In support of its allegation of consumer deception, does the FTC have any facts which show the percentage of consumers who view the TV ad who actually don't know that there's a 2-year commitment?") properly seek factual information about the existence of any pre-Complaint surveys, studies, or research and the factual support for the FTC's claims. Accordingly, while the Court does not grant DIRECTV's request to order the FTC to fully answer all the questions listed in Exhibit A, DIRECTV may, in accordance with this Order, conduct a further three-hour deposition of the FTC's Rule 30(b)(6) witness regarding the factual information about the FTC's investigations and the factual support for its claims.

Finally, the Court is aware of the parties' agreement limiting the need to provide a

---

*Id.* at 16-17. This does not, however, preclude the FTC from disclosing the existence of any pre-Complaint surveys, studies, or research. DIRECTV is not asking the FTC to produce the documents themselves. As such, the parties' prior discovery agreement does not preclude the FTC from responding to DIRECTV's questions regarding the existence of any pre-Complaint surveys, studies, or research.

4

privilege log. Should the FTC continue to withhold factual information on the basis that the information is privileged or protected as attorney work product, the Court nonetheless will order the FTC to provide a privilege log with respect to the withheld information and require the FTC to identify the basis for its claim(s) of privilege.

**B.      Suzuki Deposition**

The FTC seeks to depose Mr. Suzuki relating to DIRECTV's affirmative defenses of laches, estoppel, and waiver based on the FTC's decision not to join a Multistate Agreement ("MSA") between DIRECTV, all 50 states, and the District of Columbia. Suzuki Ltr. at 1. DIRECTV claims it was prejudiced by the FTC's failure to object to the MSA and by the FTC allowing DIRECTV to enact an MSA-based national compliance program. *Id.* The FTC thus seeks to determine whether DIRECTV in fact complied with the MSA, as its "failure to do so would moot DIRECTV's affirmative defenses." *Id.* For that reason, the FTC requests to depose Mr. Suzuki, DIRECTV's in-house counsel who developed and oversaw DIRECTV's MSA compliance program. *Id.*

DIRECTV contends the information sought from Mr. Suzuki is privileged, and the factors set forth in *Shelton v. American Motor Corporation*, 805 F.2d 1323 (8th Cir. 1986), preclude the FTC from deposing Mr. Suzuki. Suzuki Ltr. at 5. DIRECTV instead offers to substitute Brad Bentley, a marketing executive, for Mr. Suzuki—an offer the FTC rejects. *Id.* at 1.

The Federal Rules of Civil Procedure do not expressly prohibit taking the deposition of opposing counsel. *See* Fed. R. Civ. P. 30(a)(1) ("A party may . . . depose any person[.]"). Nevertheless, "[t]he practice of forcing trial counsel to testify as a witness . . . has long been discouraged." *Shelton*, 805 F.2d at 1327. The Eighth Circuit, "recogniz[ing] that circumstances may arise in which the court should order the taking of opposing counsel's deposition[,]" limited those circumstances "to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* While the Ninth Circuit has not published a decision addressing the circumstances when a party may depose opposing counsel, courts in this district have followed *Shelton*. *See, e.g.*, *ATS Prods.*,

*Inc. v. Champion Fiberglass, Inc.*, 2015 WL 3561611, at *3 n.5 (N.D. Cal. June 8, 2015) (citing cases).

The parties dispute the applicability of *Shelton* to this case.[3]  Suzuki Ltr. at 2, 5.  Arguing *Shelton* does not apply, the FTC notes Mr. Suzuki "has not entered an appearance, taken a deposition, signed discovery responses or in any other way acted as such."  *Id.* at 2.  DIRECTV admits Mr. Suzuki has not done those things but argues he has still worked on this case and therefore *Shelton* applies.  *Id.* at 5.

Courts have held that *Shelton* does not apply to all circumstances where a party seeks to depose opposing counsel.  *See Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) ("*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial.").  The problem is that the precise nature and extent of Mr. Suzuki's involvement in this case is unclear; DIRECTV did not elaborate on what exactly Mr. Suzuki has done.  As the FTC points out, some courts have declined to apply *Shelton* to situations where the attorney sought to be deposed is not trial counsel or does not directly represent the party in the pending litigation.  *See* Suzuki Ltr. at 2 (citing *Luster v. Schafer*, 2009 WL 2219255, at *2-3 (D. Colo. July 23, 2009) (holding *Shelton* does not apply to proposed attorney-deponent who represented defendant during administrative proceeding but not during instant litigation)); *ATS Prods.*, 2015 WL 3561611, at *3 (declining to apply *Shelton* where "the subject matter of the deposition of opposing counsel [was] not his conduct in the pending case but his percipient knowledge of the events surrounding a prior concluded litigation"); *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 18 (D.D.C. 2002) (holding *Shelton* factors did not apply where, "unlike *Shelton*, the proposed deponents . . . [were] not litigation or trial counsel").

---

[3] The parties also dispute whether there was an agreement regarding the FTC's waiver of its right to depose Mr. Suzuki.  The Court does not address the existence or enforceability of such an agreement.

It is undisputed that Mr. Suzuki has not formally appeared in this matter. But because the Court cannot ascertain the extent of Mr. Suzuki's involvement in this case, the Court does not resolve *Shelton*'s applicability. The Court is instead guided by Rule 26(b)(2)(C), which requires courts to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C). The Court finds there are ways the FTC can obtain the information it seeks without deposing Mr. Suzuki, specifically, by deposing a Rule 30(b)(6) designee.

Pursuant to Rule 30(a)(1), "[a] party may, by oral questions, depose any person, including a party without leave of court except as provided in Rule 30(a)(2)." Fed. R. Civ. P. 30(a)(1). "[A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). That "organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* A Rule 30(b)(6) designee "must testify about information known or reasonably available to the organization." *Id.* The organization "has an affirmative duty to educate and prepare the designated representative for the deposition." *S. Cal. Stroke Rehab. Assocs., Inc. v. Nautilus*, 2010 WL 2998839, at *1 (S.D. Cal. July 29, 2010).

While Mr. Suzuki likely possesses relevant knowledge as to DIRECTV's MSA compliance program, so would a Rule 30(b)(6) designee. Indeed, a Rule 30(b)(6) witness is not required to possess personal knowledge of the facts. *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer,* 285 F.R.D. 481, 486 (N.D. Cal. 2012). Instead, "[t]he designee may become educated by reasonably obtaining information from documents, past employees, or other sources." *Id.* The FTC seeks factual information about DIRECTV's MSA compliance program. Suzuki Ltr. at 2. DIRECTV can ensure any Rule 30(b)(6) designee is sufficiently informed to answer the FTC's questions on its behalf. *See Century 21 Real Estate, LLC v. All Prof'l Realty, Inc.*, 2012 WL 2116409, at *2 (E.D. Cal. June 6, 2012) ("By commissioning the designee as the voice of

the corporation, the Rule obligates a corporate party to prepare its designee to be able to give binding answers in its behalf." (quotations omitted)).

Accordingly, while the Court will not compel Mr. Suzuki's deposition, it will allow the FTC to depose a Rule 30(b)(6) designee to testify as to DIRECTV's MSA compliance program. No later than 4:00 p.m. on August 9, 2016, the FTC shall serve on DIRECTV a list of topics it intends to cover at the deposition regarding the MSA compliance program to enable DIRECTV to identify and prepare an appropriate Rule 30(b)(6) witness. The FTC also should highlight those questions it asked during the earlier Rule 30(b)(6) deposition that the FTC contends were not answered appropriately. No later than 4:00 p.m. on August 11, 2016, the parties shall meet and confer to schedule a date for the 30(b)(6) deposition. The 30(b)(6) deposition shall last no more than three hours.

## C.     The RIO Algorithm

The parties' final dispute concerns DIRECTV's text-mining algorithm. The Court previously ordered DIRECTV to produce a sample of RIO files. RIO Order at 1-2, Dkt. No. 131. During a post-production deposition of DIRECTV's designated witness on RIO, the FTC learned there were significant "shortfalls" with the produced RIO files. RIO Ltr. at 1. In particular, DIRECTV did not produce the source code for an algorithm which shows how DIRECTV coded certain fields in the RIO files.[4]  *Id.*  DIRECTV in fact has used two algorithms: it used one algorithm until 2014, and has used another since 2014. *Id.* At the hearing, the FTC stated it is more concerned with obtaining the more recent algorithm, the one used from 2014 to today. The FTC contends it needs the algorithm to "efficiently review and interpret the produced RIO sample files" and so it can determine whether its analysis of the RIO files differs from DIRECTV's. *Id.* DIRECTV, however, argues (1) the FTC does not need the algorithm, as it has the algorithm's results; (2) the FTC cannot use the algorithm to generate admissible analyses of the produced RIO notes; (3) DIRECTV will not use the algorithm in this case on account of high error rates associated with algorithms and its inapplicability to the issues; and (4) the FTC will use the source

---

[4] During the July 25 meet-and-confer, DIRECTV agreed to produce the other missing parts of the produced RIO samples. RIO Ltr. at 1.

1    code to obtain more discovery by making further requests as to its function.  *Id.* at 1-2.

2            The FTC's possession of the algorithm's results does not foreclose its ability to seek the
3    algorithm itself, particularly given that the algorithm will aid it in reviewing the RIO files and
4    DIRECTV has not otherwise shown its production to be unduly burdensome.  *See Campbell v.*
5    *Facebook Inc.*, 310 F.R.D. 439, 444-46 (N.D. Cal. 2015) (ordering production of information to
6    help plaintiff analyze already-produced source code where such production would be minimally
7    burdensome to producing party).  DIRECTV's own planned use of the algorithm is irrelevant;
8    moreover, DIRECTV can argue as to the algorithm's accuracy and admissibility should the FTC
9    attempt to introduce it at trial.

10           The Court thus orders DIRECTV to produce the current algorithm, subject to the parties'
11   protective order (*see* Dkt. No. 54).

## CONCLUSION

13           In light of the foregoing, the Court **ORDERS** the following:

14           1.     DIRECTV's request to compel further responses to Topic No. 3 is **GRANTED IN**
15   **PART**.  DIRECTV may conduct a three-hour deposition of the FTC's Rule 30(b)(6) witness based
16   on the parameters articulated in this Order.

17           2.     The FTC's request to specifically compel Takehiko Suzuki's deposition is
18   **DENIED**.  Instead, the FTC may depose a Rule 30(b)(6) designee for DIRECTV for three hours
19   to answer questions regarding DIRECTV's MSA compliance program.

20           3.     The FTC's request to compel production of the algorithm is **GRANTED** subject to
21   the parties' protective order.

22           **IT IS SO ORDERED.**

24   Dated: August 5, 2016

                                                    _____
                                                    MARIA-ELENA JAMES
                                                    United States Magistrate Judge