Eric D. Edmondson, D.C. Bar No. 450294
Erika Wodinsky, Cal. Bar No. 091700
Boris Yankilovich, Cal. Bar No. 257887
Jacob A. Snow, Cal. Bar No. 270988
901 Market Street, Suite 570, San Francisco, CA 94103
(415) 848-5100/(415) 848-5184 (fax)
*eedmondson@ftc.gov*; *ewodinsky@ftc.gov*;
*byankilovich@ftc.gov*; *jsnow@ftc.gov*

Raymond E. McKown, Cal. Bar No. 150975
Stacy Procter, Cal. Bar No. 221078
Kenneth H. Abbe, Cal. Bar No. 172416
10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024
(310) 824-4343/(310) 824-4380 (fax)
*rmckown@ftc.gov*; *sprocter@ftc.gov*

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

DIRECTV, a corporation, and

DIRECTV, LLC, a limited liability company,

Defendants.

CASE NO. 15-cv-01129-HSG

**FEDERAL TRADE COMMISSION'S MOTION FOR SANCTIONS UNDER RULE 37(e)(1)**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. LEGAL STANDARD.................................................................................. 2

III. ARGUMENT ............................................................................................ 2

A. DIRECTV Had an Obligation to Preserve Relevant Evidence Starting in 2010.... 2

B. DIRECTV's Loss of Websites Associated with the Wind Report Justifies Exclusion of Dr. Wind's Survey Evidence ........................................................... 3

1. DIRECTV Has Lost Website Evidence ..................................................... 3

2. The FTC Has Been Prejudiced ................................................................ 5

C. DIRECTV's Loss of A/B Testing Evidence Justifies Exclusion of the A/B Test Evidence On Which DIRECTV Now Relies ........................................................ 6

1. DIRECTV Has Lost A/B Testing Evidence ............................................... 6

2. The FTC Has Been Prejudiced ................................................................ 7

D. DIRECTV's Loss of Analytics Evidence Justifies Exclusion of that Evidence and Any Related Expert Analysis ............................................................................ 8

1. DIRECTV Has Lost Analytics Evidence .................................................. 8

2. The FTC Has Been Prejudiced ................................................................ 8

E. Exclusion of Evidence and Expert Analysis Is an Appropriate Targeted Remedy 9

IV. CONCLUSION .......................................................................................... 10

## I. INTRODUCTION

Since 2010, DIRECTV has had an affirmative obligation to preserve evidence relevant to this litigation. For three categories of evidence—interactive website evidence, website A/B testing evidence, and website analytics evidence—DIRECTV has failed to comply with that obligation, and relevant evidence has been lost. This motion is necessary because DIRECTV now plans to rely on exactly the types of evidence it has failed to preserve. Exclusion of that evidence is the appropriate tailored remedy.

*Interactive Website Evidence.* DIRECTV's survey expert relied on the results of surveys performed on its live website in January and June–July 2015. When it conducted that survey, DIRECTV did not capture the interactive website purchase flow and produce that captured material to the FTC with its survey expert report by Professor Jerry Wind. In contract, the FTC produced the interactive website to DIRECTV that underlies the FTC's web-based survey. The interactive site produced by the FTC allows anyone to experience the website just as participants in the survey did.

*A/B Test Evidence.* In the ordinary course of its business, DIRECTV has conducted thousands of tests to assess how consumers respond to material on its website. Those tests—called "A/B tests"—provide different versions of the website to different groups of consumers and measure their response. Of the thousands of A/B tests, DIRECTV has preserved only one—the one prepared specifically for litigation and relied on by its expert witness. Nearly all of the remaining tests have been lost.

*Web-analytics Evidence.* DIRECTV has also used a "web analytics" tool—called Adobe SiteCatalyst—to track consumer behavior on its website. In 2015, after the FTC filed this suit, DIRECTV modified the contract with SiteCatalyst to provide that data older than three years not be maintained. DIRECTV has had an obligation to preserve analytics data since 2010, but has not done so.

DIRECTV has failed to comply with its evidence-preservation obligations. The appropriate remedy is to exclude evidence of the type that has been lost, along with any expert analysis of that evidence.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) provides that "[i]f electronically stored information [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)–(e)(1). *See also Matthew Enter., Inc. v. Chrysler Grp., LLC*, 2016 WL 2957133, at *1 (N.D. Cal. May 23, 2016).

In 2015, Rule 37(e) was amended to unify the standard for imposing sanctions on parties that fail to preserve electronically stored information ("ESI"). The amended rule eliminates the need for courts to rely on inherent authority in issuing preservation-related sanctions and "specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify those measures." Fed. R. Civ. P. 37, Advisory Committee Notes, 2015 Amendment. The new rule—based on the long-standing duty established in case law to preserve ESI once litigation is anticipated—"places no greater substantive obligation on the party preserving ESI." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 496 (S.D.N.Y. 2016).

## III. ARGUMENT

### A. DIRECTV Had an Obligation to Preserve Relevant Evidence Starting in 2010.

In the investigation phase of this case, the FTC served DIRECTV with two Civil Investigative Demands, the first dated April 23, 2010 and the second dated December 13, 2013. Both included an admonition that DIRECTV preserve relevant evidence. Dkt. No. 176-07 ("First CID"), p. 3; Dkt. No. 176-08 ("Second CID"), p. 5. The First CID, for example, directed the company to "suspend any routine procedures for document destruction and take other measures to prevent the destruction of documents that are in any way relevant to [the FTC's] investigation during its pendency, irrespective of whether [DIRECTV] believe[s] such documents are protected from discovery by privilege or otherwise." First CID, p. 3. Even

without those admonitions, however, the pending investigation triggered an ongoing duty to preserve evidence. *Marten Transport, Ltd. v. Plattform Advertising, Inc.*, Case No. 14-cv-02464-JWL-TJJ, 2016 WL 492743 (D. Kan. Feb. 8, 2016) (A party is deemed to have notice of duty to preserve "if the party has received a discovery request, a complaint has been filed, 'or any time a party receives notification that litigation is likely to be commenced.'").

Therefore, as of April 2010, DIRECTV had an obligation to "suspend any existing policies related to deleting or destroying files and to preserve all relevant documents related to the litigation." *In re Napster, Inc. Copyright Litig*., 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006). That obligation "is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." *Id.* (quoting *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557–58 (N.D. Cal. 1987)). "Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *Id.* (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y.2003)).

### B. DIRECTV's Loss of Websites Associated with the Wind Report Justifies Exclusion of Dr. Wind's Survey Evidence.

#### 1. DIRECTV Has Lost Website Evidence.

DIRECTV's expert report, authored by Professor Jerry Wind and served in this case on September 16, 2016 ("Wind Report"), relies primarily on a two-phase survey of consumers who had recently subscribed by web or by phone (the "Convergys Study"). Wind Report, p. 48, Ex. 2, p. 4.[1] The surveyed consumers who subscribed over the web did so by navigating DIRECTV's live, interactive website on the Internet. *See* Wind Report, p. 47. The surveys were conducted in January and June–July 2015—long after DIRECTV's obligation to preserve evidence arose. *See Id.* at Ex. 2, p. 4. The interactive website used for the survey is plainly relevant to the litigation since it forms the basis for portions of Dr. Wind's expert analysis.

[1] The Wind Report was filed as Docket No. 189-14 by DIRECTV on October 6, 2016 in support of DIRECTV's opposition to the FTC's motion for partial summary judgment. *See* Declaration of Jerry Wind, ¶ 5, Dkt. No. 189-13.

Nonetheless, DIRECTV did not preserve the interactive website used in the consumer surveys, and has stated that no such evidence can be recovered. Declaration of Jacob A. Snow in Support of Motion for Sanctions ("Snow Decl."), ¶ 2, Ex. A, October 4, 2016 Email (email chain including written confirmation from FTC counsel that DIRECTV no longer possesses the interactive websites used in the survey).[2]

In its section of the parties' letter brief, DIRECTV argues the FTC understood that DIRECTV was not preserving every interactive version of its website. Dkt. No. 203 ("Letter Brief"), p. 4. DIRECTV misunderstands the FTC's motion. The FTC is *not* suggesting that DIRECTV should have preserved *all* of its interactive websites; just those versions that DIRECTV plans to rely on in support of its case. That is, DIRECTV should have preserved the particular websites on which the Convergys Study was conducted, first in January 2015 and then in June–July 2015. Wind Report, Ex. 2, p. 4. DIRECTV failed to preserve the interactive website, despite that it was using the website to conduct surveys for use in litigation. The preservation and production of the particular versions of the site subject to the surveys is particularly important given that, between January and October 2015, there were "at least 65 releases of the site and over 2000 content changes." Snow Decl. ¶ 5, Ex. D, October 23, 2015 Email. The fact that DIRECTV cannot preserve *every* version of its website is no excuse for its failure to preserve the specific versions of the interactive websites that form the core of its survey expert's work.

[2] In its portion of the letter brief on this issue, DIRECTV argued that the FTC can simply recreate DIRECTV's site from the original source code. Letter Brief, p. 4. But DIRECTV has maintained since at least October 2015 that it is not practical to reliably recreate and produce to the FTC any version of the interactive website based on the source code. Snow Decl. ¶ 3, Ex. B, October 19, 2015 Email (Counsel for DIRECTV stated that "we cannot replicate historic operative versions of directv.com (or even just the purchase flow from that site) absent extraordinary burden (and have not done so). Even if such a reconstruction were technically possible, in light of the dynamic nature of the sites and connectivity to back end functionality which is also dynamic, we could not guarantee an accurate replica of the consumer experience."). After the FTC prepared a letter brief on the subject, DIRECTV agreed to produce the underlying source code. Snow Decl. ¶ 4, Ex. C, March 9, 2016 Email. The FTC does not now dispute that reliably recreating a version of the 2015 website in time to be used in litigation would be impractical.

DIRECTV could have taken reasonable steps to preserve its interactive website evidence in the same manner as the FTC preserved the interactive website for its consumer-survey expert, Dr. Tülin Erdem. The interactive website evidence produced with Dr. Erdem's report allowed DIRECTV, the Court, and DIRECTV's experts to review and analyze the website as survey participants and consumers would have experienced it. The FTC preserved that website by capturing the DIRECTV website in August 2013 and modifying that capture to ensure that the site worked reliably and accurately. *See* Declaration of Nathan Good in Support of Partial Motion for Summary Judgment, ¶ 3, Dkt. No. 176-14. DIRECTV can decide for itself how to comply with its evidence-preservation obligations, but the steps taken by the FTC to preserve interactive website evidence are one reasonable option. DIRECTV did not take readily available steps to preserve the website on which its experts would rely.

**2. The FTC Has Been Prejudiced.**

DIRECTV's loss of the interactive website plainly prejudices the FTC. First, neither the FTC nor the Court can view or interact with the website that surveyed consumers saw. The screenshots relied on by Dr. Wind (in Exhibit 3 to the Wind Report) are an inadequate substitute because they are static, from the wrong dates, and misleadingly display disclosures typically hidden behind hyperlinks and info-hovers. Second, without the interactive site, the FTC's survey expert cannot attempt to replicate Dr. Wind's survey (for example, in a manner that would cure the defects in his methodology). And third, the FTC's usability expert cannot perform an analysis of the website tested by Dr. Wind. DIRECTV's disclosure of the surveys in September 2016—well over a year after they were conducted—prevented the FTC from capturing the interactive website material corresponding to the dates of the surveys. The Court should therefore exclude the survey evidence based on the website as well as expert analysis of that survey evidence.

### C.  DIRECTV's Loss of A/B Testing Evidence Justifies Exclusion of the A/B Test Evidence On Which DIRECTV Now Relies.

#### 1.  DIRECTV Has Lost A/B Testing Evidence.

"A/B testing" refers to the common practice of presenting different experiences to subsets of consumers and analyzing how consumers respond.  DIRECTV has likely conducted *thousands* of A/B tests on its website.  Snow Decl. ¶ 6, Ex. E, Transcript of Deposition of Audrey Chen ("Chen Tr.") 160:4–18.  Each A/B test has a "test" version and a "control" version that is seen by different groups of users.  Each version is sometimes called a "stimulus" and the two versions are the "A" and "B" in the phrase "A/B test."  Because A/B testing can show how consumers respond to different advertising stimuli (under otherwise similar conditions), the FTC's first set of Requests for Production, served on June 26, 2015, sought consumer research (including A/B tests) relating to the advertising and material terms of DIRECTV's satellite television service.  FTC's First Set of Requests for Production, Dkt. No. 113-1 ("FTC RFPs"), p. 17.  The FTC had previously requested this material through Civil Investigative Demands issued in 2010 and 2013.  First CID, p. 14; Second CID, p. 13.  DIRECTV has therefore had an obligation to preserve A/B test information for years before this case was filed.

Despite its duty to preserve this information, DIRECTV has lost nearly every ordinary-course-of-business document showing what A/B tests the company performed on its website.  DIRECTV has recently used two different software products to perform A/B tests on its website: 1) Adobe Test & Target; and 2) Monetate.  Chen Tr. 32:22–25.  From 2011 through 2014, DIRECTV used Adobe Test & Target for A/B testing.  *Id.* at 26:10–17.  In 2014, DIRECTV switched to Monetate.  *Id.*  Since the Adobe Test & Target contract ended, DIRECTV has no way to access the data in that product: in the words of Audrey Chen, a Senior Manager for Web Analytics at DIRECTV, "basically it's gone."  Chen Tr. 44:8–45:6.  As for the data in Monetate, DIRECTV has confirmed that images of the two experiences cannot be recovered.  Snow Decl. ¶ 7, Ex. F, August 22, 2016 Email ("DIRECTV is unable to extract the test [Business As Usual] / control stimuli from Monetate.").  DIRECTV has lost nearly all evidence of the A/B test stimuli except one: the litigation-focused A/B test performed in connection with Dr. Wind's report and

relied on in his analysis.[3] Wind Report, Ex. 2, p. 38 (showing the interface seen by users who experience a different checkout process as part of Dr. Wind's survey); *see also* Chen Tr. 115:25–119:5 (describing the A/B test conducted for use in litigation).

DIRECTV could have taken reasonable steps to preserve other A/B tests performed in the ordinary course of business. Appendix A of the Wind Report includes a set of screenshots that show the differences between the "test" and the "control" websites used in the survey. Wind Report, Ex. 2, p. 35–40. Screenshots like those in the Wind Report are a simple means of preserving the test and control stimulus of the A/B test, since that information was apparently not preserved inside the Monetate tool. For the A/B test information in the Adobe Test & Target tool, DIRECTV should have preserved that information instead of destroying it. In sum, DIRECTV has failed to preserve evidence showing what the test and control stimuli were for thousands of A/B tests conducted by the company.

**2. The FTC Has Been Prejudiced.**

DIRECTV's loss of A/B test stimuli prejudices the FTC. DIRECTV is asking the Court to let it rely on the *only* preserved A/B test (prepared solely for litigation) after failing to preserve nearly all other ordinary-course A/B test information. The FTC is entitled to compare the evidence that DIRECTV has prepared for litigation with similar evidence created in the ordinary course of business. Because DIRECTV has lost the information showing the test and control stimulus for essentially all of the A/B tests conducted in the ordinary course of business, the FTC has been deprived of that opportunity to test the results of the Convergys Study against ordinary-course A/B test documents, or to commission a counter-survey. *See Pinterest v. Pintrips, Inc.*, 2015 WL 2268498, at *2 (N.D. Cal., May 14, 2015) (noting that a counter-survey can test flaws in a consumer survey). The Advisory Committee Notes for the 2015 Amendment to Rule 37(e)(1) contemplate exactly this remedy for exactly this prejudice, noting that "it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to

[3] DIRECTV eventually produced two images which may reflect the test and control stimulus for a second A/B test with Bates numbers DIRECTV-0568620–21. The stimuli for the remaining thousands of A/B tests have been lost.

preserve other evidence that might contradict the excluded item of evidence." Excluding the Convergys website A/B test and Dr. Wind's analysis of it is an appropriately targeted remedy under Rule 37(e).

### D. DIRECTV's Loss of Analytics Evidence Justifies Exclusion of that Evidence and Any Related Expert Analysis.

#### 1. DIRECTV Has Lost Analytics Evidence.

DIRECTV has also produced "website analytics" evidence, which relates to the behavior of users navigating the DIRECTV website. *See, e.g.*, Snow Decl. ¶ 8, Ex. G. That material purports to show, for example, the rates at which users purchased satellite-television service (*i.e.*, the "conversion rate") across different sales channels. *Id.*

In late 2015, DIRECTV modified its contract with its analytics-platform supplier to automatically delete all analytics data older than three years. Chen Tr. 42:8–43:16 (testifying that "there is no way" to access deleted analytics data).[4] That is, DIRECTV destroyed years of responsive data *after* the FTC served two CIDS and a set of litigation requests for production, all identifying analytics data as relevant and responsive information. First CID, p. 14; Second CID, p. 13; FTC RFPs, Dkt. No. 113-1, p. 17 (RFP 10). DIRECTV has confirmed Ms. Chen's testimony that the data is lost and cannot be recovered. Snow Decl. ¶ 6, Ex. F, August 22, 2016 Email (stating, in revisions to an email from FTC counsel on August 10, 2016 that DIRECTV "believe[s] that Ms. Chen's deposition testimony was accurate").

DIRECTV plainly failed to take reasonable steps to preserve the analytics evidence. Instead of modifying the contract to allow Adobe to destroy the analytics data older than three years, DIRECTV should have affirmatively preserved it as the law requires.

#### 2. The FTC Has Been Prejudiced.

DIRECTV apparently intends to use analytics evidence in support of its case, but because DIRECTV has not preserved any data from before 2014, the FTC has no opportunity to test

[4] DIRECTV states in the letter brief that the analytics materials were not lost. Letter Brief, p. 5. This is contrary to Audrey Chen's sworn testimony. Chen Tr. 42:8–43:16. It is also contrary to DIRECTV's email confirming, in response to the FTC's inquiry, that her testimony was accurate. Snow Decl. ¶ 6, Ex. F.

whether the recent data matches older, destroyed data. For example, the FTC has no way of knowing whether one of the previous versions of DIRECTV's website caused users to interact with the site differently from the data DIRECTV has produced. In light of DIRECTV's failure to maintain the analytics data, the Court should not presume that the lost data is the same as the data DIRECTV has produced. The Court should enjoin DIRECTV from relying on any analytics data from the SiteCatalyst platform and exclude any expert analysis of that data.

**E. Exclusion of Evidence and Expert Analysis Is an Appropriate Targeted Remedy.**

The Court should exclude the evidence in question—and any expert analysis of that evidence—as a remedy for DIRECTV's spoliation of evidence. *See Internmatch, Inc. v. Nxtbigthing, LLC*, Case No. 14-cv-05438-JST, 2016 WL 491483, at *3 (N.D. Cal. Feb. 8, 2016) (appropriate sanctions include exclusion of testimony based on the despoiled evidence); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) (expert testimony based on destroyed evidence was properly excluded due to prejudice).

DIRECTV calls the FTC's proposed remedy an "exclude everything" approach. Letter Brief, p. 5. In fact, the FTC's proposed remedy is quite narrow. The FTC requests that the Court exclude the particular categories of evidence that DIRECTV has failed to adequately preserve: 1) interactive-website data; 2) website A/B test data; and 3) website analytics data. The first two of these categories—the interactive website and A/B test data—were introduced by DIRECTV through the Wind Report, and specifically through a web-based survey performed by Convergys. *See* Wind Report, Ex. 2. Only the portions of the Wind Report that rely on the Convergys web survey should be excluded. The third category—DIRECTV's analytics data—was produced by DIRECTV independent of any expert report, and therefore can be separately excluded. The FTC is *not* seeking wholesale exclusion of expert testimony. Rather, the FTC seeks exclusion of the specific types of evidence subject to spoliation, and any expert analysis of that evidence.

The FTC's proposed remedy is the only reasonable cure for the prejudice to the FTC. Other more severe remedies are available under Rule 37(e)(2)—including dismissal of the action or adverse presumptions about the lost evidence—only when intent is found. Although

DIRECTV has long known of its obligation to preserve relevant evidence, the FTC has not alleged in this motion that DIRECTV's spoliation of evidence is intentional. Among those sanctions available under Rule 37(e)(1), only exclusion of the evidence will cure the prejudice. Monetary sanctions (*e.g.*, attorneys' fees associated with the present motion) against DIRECTV are unrelated to the prejudice suffered by the FTC. Additional discovery or a schedule modification, while they might be appropriate in some cases, would also fail to cure the prejudice here—neither more time nor more discovery can recover the lost evidence. As the 2015 Amendment Advisory Committee Notes to Rule 37(e) state, "it may be appropriate to exclude a specific item of evidence to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence." Exactly this limited remedy is appropriate here.

## IV.  CONCLUSION

For the reasons stated above, the Court should exclude: 1) the stimulus and results of any web-based survey conducted by DIRECTV (including the Convergys website survey that appears in the Wind Report) as well as any expert analysis of such surveys; 2) all A/B test information, including all data associated with any A/B test and any stimulus associated with any A/B test, as well as any expert analysis of that A/B test information; and 3) all electronically stored information from DIRECTV's SiteCatalyst analytics platform.

Respectfully Submitted,

Dated:   November 16, 2016           /s/ Jacob A. Snow

Eric D. Edmondson
Erika Wodinsky
Boris Yankilovich
Jacob A. Snow

Attorneys for Plaintiff
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
(415) 848-5100 (phone)
(415) 848-5184 (facsimile)