UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, INC., et al.,<br><br>Defendants. | Case No. 15-cv-01129-HSG (MEJ)<br><br>**ORDER RE: FTC'S MOTION FOR SANCTIONS; RE: MOTIONS TO SEAL**<br><br>Dkt. Nos. 206, 207, 211, 219 |

## INTRODUCTION

Plaintiff Federal Trade Commission (the "FTC") moves for sanctions against Defendant DIRECTV, INC. ("DIRECTV") pursuant to Federal Rule of Civil Procedure 37(e)(1). Mot., Dkt. No. 207. The District Court referred the Motion to the undersigned. Dkt. No. 208.

Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **DENIES** the FTC's Motion to exclude evidence for the following reasons, but **ORDERS** DIRECTV to produce Dr. Wind for a limited deposition.

## MOTIONS TO SEAL

Before turning to FTC's Motion for Sanctions, the Court first addresses DIRECTV's requests to file under seal certain documents the parties rely upon in their briefs. *See* DIRECTV First Seal. Mot., Dkt. No. 211; DIRECTV Second Seal. Mot., Dkt. No. 219. Civil Local Rule 79-5(b) permits parties to file under seal documents, or portions thereof, that are shown to be "privileged, protectable as a trade secret or otherwise entitled to protection under the law." The request to seal "must be narrowly tailored to seek sealing only of sealable material." *Id*. Where

the motion at issue is tangentially related to the underlying cause of action, the party seeking to seal information need only show there is "good cause" to seal the information "'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097-1101 (9th Cir. 2016) (quoting Fed. R. Civ. P. 26(c)). As, the Motion for Sanctions is tangentially related to the merits of the action, the good cause standard applies.

**A.     Exhibits to Jacob A. Snow Declaration**

In support of its Motion, the FTC relies upon a number of documents, including Exhibits E and G to the Declaration of Jacob Snow. *See* FTC Seal. Mot., Dkt. No. 206; Snow Decl., Dkt. No. 207-1. The FTC moves to file these documents under seal because DIRECTV has designated them as confidential pursuant to the terms of the parties' protective order. *See id*. In accordance with Civil Local Rule 79-5, DIRECTV submitted a declaration to establish the designated material is sealable. *See* Murphy Decl., Dkt. No. 211-1. DIRECTV asks the Court to seal limited portions of Exhibit E (specifically, 25:1-12, 26:18-27:23, 28:3-22, 29:1-2, 29:5-32:16, 41:1-12, 41:18-42:7, 45:7-46:24, 47:2-48:23, 113:1-119:19, 120:4-14, 157:1-158:11, 159:11-24), and the entirety of Exhibit G. *Id*. ¶ 5. DIRECTV represents the information it seeks to seal is proprietary or highly confidential, commercially sensitive, and that its disclosure would put it at a commercial disadvantage. *See id*. ¶ 4. The portions of Exhibit E that DIRECTV seeks to seal contain a "discussion of internal processes, data tracking tools, web analytics strategy, internal research strategy, and internal operations and business structure." *Id*. DIRECTV further represents that the tables comprising Exhibit G "contain highly sensitive and confidential business information regarding DIRECTV's website analytics. These spreadsheets and charts expose DIRECTV's research methodology, website advertising strategy and data, and sales statistics to competitors." *Id*. ¶ 5.

In its Motion, the FTC relies upon only one of the portions of Exhibit E that DIRECTV moves to file under seal. *See* Mot. at 6-8. Similarly, while the FTC cites Exhibit G in its Motion, it only does so to illustrate a type of analytics DIRECTV produced; the FTC does not actually discuss the contents of the document in its Motion. *See id*. at 8. DIRECTV declares this

information is confidential and proprietary, and there are no countervailing interests weighing in favor of disclosure because the information in Exhibit E and the contents of the document attached at Exhibit G are not relevant to the Motion. Murphy Decl. ¶¶ 4-5. With respect to the portion of Exhibit E that the FTC does rely upon in its Motion (Ex. E at 115:25-119:4), the Court finds the request to seal is narrowly tailored, and that DIRECTV has established that disclosure of the proprietary and commercially sensitive information would subject it to "annoyance, embarrassment, oppression, or undue burden or expense."

The Court accordingly finds good cause to seal the following portions of the Snow Declaration: (1) Exhibit E 25:1-12, 26:18-27:23, 28:3-22, 29:1-2, 29:5-32:16, 41:1-12, 41:18-42:7, 45:7-46:24, 47:2-48:23, 113:1-119:19, 120:4-14, 157:1-158:11, 159:11-24; and (2) Exhibit G in its entirety.

**B.   Wind Report & Convergys Survey**

DIRECTV retained Professor Wind as an expert on consumer surveys. In September 2016, Dr. Wind served his expert report in this matter (the "Wind Report"). The Wind Report relies upon a two-phased survey of consumers who subscribed to DIRECTV services by phone or by navigating DIRECTV's live, interactive website on the internet (the "Convergys Survey"). DIRECTV moves to file excerpts of the Wind Report and Convergys Survey, which it relies upon to oppose the FTC's Motion. *See* DIRECTV Second Seal. Mot.; Hummel Decl., Exs. 1 & 8, Dkt. No. 220-1. DIRECTV declares these documents include sensitive commercial information, are not available to all employees or the public, and would place DIRECTV at a competitive disadvantage if disclosed. DIRECTV Second Seal. Mot. at 2 (citing earlier-filed declaration). The District Court already granted DIRECTV's request to seal these documents in connection with the FTC's prior motion for partial summary judgment. *See* Summ. J. Seal. Order at 2-3, Dkt. 216. Because the documents were filed in connection with a dispositive motion, the District Court applied the more stringent "compelling reason" standard to evaluate the sealing request. *See id*. There is no reason why excerpts of the same documents DIRECTV uses to oppose the non-dispositive Motion should be afforded less confidential treatment. The undersigned accordingly finds good cause to seal Exhibits 1 and 8 of the Hummel Declaration.

**DISCUSSION**

**A.    Summary of Discovery Dispute**

Pursuant to this Court's Discovery Standing Order, the parties previously filed a joint letter brief regarding this dispute. *See* Jt. Ltr., Dkt. No. 203. Finding the letter brief did not provide information sufficient to allow the Court to rule on a motion for sanctions, the undersigned ordered the parties to file a fully-brief motion instead. *See* Discovery Order, Dkt. No. 205. The undersigned ordered the parties to address the following specific topics:

> (1) DIRECTV's disclosures to the FTC about what website data DIRECTV was or was not preserving, and the FTC's responses thereto; (2) what "reasonable steps" the FTC contends DIRECTV should have taken to preserve the lost ESI; (3) why the FTC believes this [electronically stored information ("ESI")] cannot be, or has not been, restored or replaced through additional discovery; (4) the prejudice caused by the loss of the ESI; and (5) why excluding the Wind Report is the most appropriate remedial measure under these circumstances.

*Id*. at 2.

There appears to be no dispute that DIRECTV's obligation to preserve information relevant to the FTC's claims or DIRECTV's defenses arose in 2010, when the FTC served its first Civil Investigative Demand. *See* Mot. at 2-3; *see also* Opp'n at 2, Dkt. No. 220. The FTC argues DIRECTV failed to preserve three categories of ESI: (1) interactive website evidence that Dr. Wind relied upon in his Report; (2) evidence of A/B testing DIRECTV conducted in the regular course of business; and (3) web-analytics data that had been maintained by SiteCatalyst. *See* Mot. The FTC asks the Court to exclude as evidence the lost information, as well as expert analysis of that information.

**B.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 37(e)(1)[1], the Court may impose sanctions upon DIRECTV for failing to preserve ESI if (1) DIRECTV failed to preserve that ESI "that should have been preserved" in anticipation or conduct of litigation; (2) the information was lost because DIRECTV failed to take reasonable steps to preserve it; (3) the ESI cannot be restored or

---

[1] The FTC does not argue DIRECTV intentionally spoliated evidence, and does not pursue sanctions available pursuant to Rule 37(e)(2).

4

replaced through additional discovery; and (4) the FTC was prejudiced by the loss.  Fed. R. Civ. P. 37(e)(1).  If the Court finds these elements are present, it may issue sanctions no greater than necessary to cure the prejudice.  *Id*.

**C.     Arguments of the Parties**

   1.     Interactive Website

The FTC argues DIRECTV was required to preserve the versions of the interactive website used in 2015 in the Convergys Survey because Dr. Wind relied upon that evidence in his Report. DIRECTV's failure to preserve that ESI, and failure to disclose the existence of the Convergys Survey for more than a year after it was conducted prevented the FTC from capturing the interactive website material itself.  Mot. at 3-5.  The FTC contends the failure to preserve those specific versions of the website has prejudiced its ability to "view or interact with the website that surveyed consumers saw;" prevent it from replicating Dr. Wind's survey; and prevent its usability expert from performing an analysis of the same website tested by Dr. Wind.  *See id*.

DIRECTV states it informed the FTC beginning in June 2010 that it was not maintaining copies of its interactive website, and that it was not technologically feasible to do so.  Hummel Decl. ¶ 2.  In August 2013, DIRECTV advised the FTC that it would produce monthly screenshots of its website instead.  *Id*. ¶ 3.  DIRECTV reiterated that it was not preserving copies of the website in February 2014.  *Id*., Ex. 2.  Instead, DIRECTV preserved and produced (1) documents depicting the website purchase flow between 2010 and the filing of the action in 2015, including documents depicting changes to the website; (2) screenshots of the purchase flow, prepared on a monthly basis, since the beginning of 2013—including screenshots of the "business as usual" ("BAU") and control webflows Dr. Wind used in his report; and (3) source code and related assets that would enable to FTC to reconstruct the website.  Opp'n at 3-4, 6.  DIRECTV also produced two Rule 30(b)(6) witnesses to testify about the source code.  *Id*. at 4.  DIRECTV argues its production of the source code fully resolved the dispute over its inability to preserve all versions of its interactive website.  *Id*. at 4-5.

Whatever DIRECTV's general obligation (and representations regarding its efforts) to preserve historical versions of its website may have been, the FTC argues DIRECTV should have

preserved the versions of the website Dr. Wind relied upon in his expert report. Reply at 1-2, Dkt. No. 225. The FTC further argues there are a number of reasons the screenshots are insufficient to allow it and the Court to understand the site as it was used by Dr. Wind: screenshots do not show whether a user must click or hover to reveal information, or how users navigate from page to page; moreover, screenshots are from the wrong dates and there is no way to confirm whether viewers saw particular views. Reply at 2. The FTC also argues that "reconstructing the interactive site from the source code is not practical (especially because there was insufficient time—the survey dates were first disclosed in September 2016)." *Id*.; *see also* Snow Decl., Ex. D (email explaining that source code alone will not allow "FTC to reconstruct anything meaningful"; that "web captures and launch notices already produced by DIRECTV remain the best source to attempt to replicate the consumer experience on the web"; and that while "reconstruction of some parts of the historic subscription flow is [not] impossible—it is just not likely to result in a form that approximates the user experience and would be at a prohibitive cost"). DIRECTV represents it "expressly disclosed to the FTC that it had tested a live version of its website in 2015 in connection with expert consultant work" and that the FTC took no steps to test the 2015 version. Opp'n at 6 n.8.

### 2. A/B Testing

"'A/B testing' refers to the common practice of presenting different experiences to subsets of consumers and analyzing how consumers respond." Mot. at 6. Two companies provided the software products DIRECTV used to conduct A/B testing from 2011 until 2015, when DIRECTV terminated its contracts with those companies. The FTC contends, and DIRECTV does not dispute, that DIRECTV did not take steps to preserve the information and lost access to "nearly every ordinary-course-of-business document showing what A/B tests the company performed on its website" and that the information—"likely *thousands* of A/B tests"—"basically [are] gone." Mot. at 6 (emphasis in original). The only A/B survey evidence that DIRECTV preserved is the A/B test Dr. Wind relied upon in his expert report. The FTC argues it is prejudiced by this loss of ESI because it has been deprived of the opportunity to compare evidence that DIRECTV prepared for litigation with similar evidence created in the ordinary course of business and has been

deprived of the opportunity to commission a counter-survey. *Id*. at 7-8.  The FTC asks the Court to exclude the A/B test Dr. Wind performed and his analysis of that test.  *Id*.

DIRECTV responds that it has produced all relevant A/B tests.  Opp'n at 11-12 (citing Hummel Decl. ¶ 21); *see also id*., Ex. 9 at 46:16-47:2; *id*., Ex. 11 at 44:9-23.  Moreover, it contends the parties resolved this dispute in July 2016 when DIRECTV agreed to produce various categories of information relating to consumer research.  *See id.* at 11.  The parties filed a joint letter brief asking the Court to resolve a number of issues, including "responsive research studies (e.g., A/B and usability studies) done by specific vendors that conducted consumer research and analysis for DIRECTV, as well as DIRECTV's analysis of this research."  July Jt. Ltr. Br. at 1, Dkt. No. 155.  By stipulation of the parties, this Court ordered that "[t]he FTC will not seek any further ESI under" this category."  July 27, 2016 Order at § 2(e), Dkt. No. 164; *see also id*. § 2(f) (dispute re consumer research documents, including A/B testing, "resolve[d]").

The FTC disagrees that DIRECTV may unilaterally decide to destroy potentially relevant evidence four years after its obligation to preserve it arose.  Reply at 3.  It also disagrees that the dispute was resolved by stipulation in July 2016, and explains it first learned about the spoliation at an August 4, 2016 meeting.  *Id*. at 3 n.6.  Nonetheless, the FTC waited three months to cure the prejudice allegedly caused by the spoliation before finally filing a discovery letter brief on the issue on October 27, 2016.  *See* Jt. Ltr. Br., Dkt. No. 203.

3. SiteCatalyst Data

The FTC contends DIRECTV failed to preserve website analytics evidence, which relates to the behavior of users navigating the company's website.  Mot. at 8.  In 2015, the FTC represents DIRECTV modified its contract with the company that supplied its analytics platform to automatically delete data older than three years.  *Id*.  The FTC represents this "destroyed years of responsive data."  *Id*.  The FTC has been prejudiced by the loss because it cannot confirm whether the new data is the same as the lost data; for example, "the FTC has no way of knowing whether one of the previous versions of DIRECTV's website caused users to interact with the site differently from the data DIRECTV has produced."  *Id*. at 9.  The FTC argues DIRECTV intends to use website analytics to support its case, and asks the Court to exclude it.  *Id*. at 8.

7

1	DIRECTV responds that the FTC was dilatory in deposing a witness about web analytics;
2	the FTC did not accept its invitation to review website analytics until the week before the
3	discovery cut-off date; the parties resolved any issues pertaining to web analytics in July 2016;
4	and DIRECTV produced additional information to the FTC on September 8, 2016. cite?  The FTC
5	did not complain about spoliation until mid-October.  Opp'n at 13-14.

**D.	Analysis**

Based on the record before it, the undersigned finds DIRECTV could have been more forthcoming in its disclosures to the FTC, and/or more proactive in its preservation efforts.  But the undersigned also finds that the FTC could have been more proactive in its efforts to obtain discovery regarding A/B testing and website analytics.

While DIRECTV's decisions may not constitute best practices, the Court finds that the FTC ultimately has not shown that it has been sufficiently prejudiced to warrant exclusion of the information.  The FTC may have preferred DIRECTV preserve and produce data in a different format, but DIRECTV did preserve and produce information that would allow the FTC to compare website versions through documents, screenshots, and source data.  The FTC fails to demonstrate the information DIRECTV has produced (including the screenshots comparing the BAU and control webflows used in the Convergys Survey) is inadequate for its purposes or those of its experts.  With respect to the A/B tests, the FTC fears that "potentially relevant" data was lost, but DIRECTV represents it produced all relevant A/B tests.  After the 2015 amendments to Rule 26(b)(1), the FTC only is entitled to discover information that is relevant to the parties' claims or defenses, and that is proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1); *see also Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence.  In fact, the old language to that effect is gone.  Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case.").  In the face of DIRECTV's assertions that it produced all relevant A/B tests, the Court cannot sanction DIRECTV for failing to preserve information solely because the FTC asserts potentially relevant other tests may have

existed. DIRECTV also represents it produced relevant website analytics. While the FTC argues that it nevertheless is entitled to data that is older than three years, it does not seem to have needed this information to prosecute this case: with respect to the A/B testing and the SiteCatalyst data, the FTC waited for months (and the close of discovery) to complain about the spoliation. The Court also notes the FTC has not offered evidence that its experts believe they needed different or additional information to render their opinions or evaluate the Wind Report.

At bottom, the only prejudice the FTC has demonstrated is that DIRECTV's failure to preserve the ESI prevents the FTC from confirming that the information Dr. Wind relied upon is consistent (in all material respects) with information from different time periods. Under these circumstances, the undersigned finds that excluding the ESI at issue in this Motion from evidence, and excluding Dr. Wind's analysis of it, would be greater than what is necessary to cure the prejudice the FTC has identified. The undersigned will, however, order DIRECTV to produce Dr. Wind for a 4-hour of deposition upon demand by the FTC. This decision is informed by the fact the Honorable Haywood Gilliam, Jr. will preside over a bench trial in this action to begin on January 30, 2017; the case will not be tried to a jury. *See* Stip. Order at 4, Dkt. No. 159. The FTC may attack Dr. Wind's Report by raising these arguments before Judge Gilliam at that time.

## CONCLUSION

For the reasons set forth above, the undersigned denies the FTC's Motion for Sanctions to the extent it requests the exclusion of evidence, but orders DIRECTV to produce Dr. Wind for a 4-hour deposition in the next 14 days, should the FTC find this option useful.

**IT IS SO ORDERED.**

Dated: December 21, 2016

MARIA-ELENA JAMES
United States Magistrate Judge