Eric D. Edmondson, D.C. Bar No. 450294
Erika Wodinsky, Cal. Bar No. 091700
Boris Yankilovich, Cal. Bar No. 257887
Jacob A. Snow, Cal. Bar No. 270988
901 Market Street, Suite 570, San Francisco, CA 94103
(415) 848-5100/(415) 848-5184 (fax)
*eedmondson@ftc.gov*; *ewodinsky@ftc.gov*;
*byankilovich@ftc.gov*; *jsnow@ftc.gov*

Raymond E. McKown, Cal. Bar No. 150975
Stacy Procter, Cal. Bar No. 221078
Kenneth H. Abbe, Cal. Bar No. 172416
10877 Wilshire Blvd., Suite 700, Los Angeles, CA 90024
(310) 824-4343/(310) 824-4380 (fax)
*rmckown@ftc.gov*; *sprocter@ftc.gov*; *kabbe@ftc.gov*

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, a corporation, and<br><br>DIRECTV, LLC, a limited liability company,<br><br>Defendants. | Case No. 15-cv-01129-HSG<br><br>**FEDERAL TRADE COMMISSION'S MOTION IN LIMINE NO. 3 TO EXCLUDE PORTIONS OF EXPERT TESTIMONY OF DR. JERRY WIND** |

Pursuant to Rules 702, 703, 403, and 408 of the Federal Rules of Evidence ("FRE" or "Rule"), the Federal Trade Commission ("FTC") moves to exclude DIRECTV expert Dr. Jerry Wind's testimony (1) regarding the Recorded Call Analysis (Sections V.C.1.b-d of the Wind Report) and (2) predicated on the control-testing of DIRECTV's website in the Convergys study (Section V.B.1).[1] Dr. Wind cannot lay the proper foundation for these opinions because DIRECTV's lawyers spoon-fed the foundational information to him, which he reflexively adopted as his own. Thus, these two portions of his testimony are not reliable expert opinions.

### A. To be admissible, expert opinions must be the product of reliable principles and methods, and must have proper foundation.

FRE 702 requires a proposed expert's testimony to be based on "sufficient facts or data" and to be the "product of reliable principles and methods" that the "expert has reliably applied . . . to the facts of the case." The trial court has a "gatekeeping role" to exclude expert testimony that does not rest on "a reliable foundation." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993). For a court to admit an expert's statistical survey, its proponent must first lay the proper foundation by showing that it was conducted in accordance with generally accepted principles and that its results are used in a statistically correct manner. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005) (affirming exclusion of survey).

Although FRE 703 permits experts to opine on facts or data "that the expert has been made aware of," the Rule "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005). Indeed, this Court has recognized as "[o]ne of the worst abuses in civil litigation . . . the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion." *Therasense, Inc. v. Becton, Dickinson & Co.*, 04-cv-02123, 2008 WL 2323856, at *1 (N.D. Cal. May 22, 2008). An expert's reliance on "factoid[s]" provided to the expert by the client or its lawyers results in opinions "based on . . . untested and partisan foundation," not "sufficient facts and data within the meaning of Rule 702." *Id.* at *1-2.

---

[1] Dr. Wind's expert report ("Wind Rpt.") has been filed, in part, as Dkt. Nos. 188-22, 23, 24.

This "charade" does not pass for reasonable expert reliance under Rule 703. *Id.* at *2.

**B. Dr. Wind's opinions regarding the Recorded Call Analysis ("RCA") are inadmissible because they lack proper foundation.**

Dr. Wind's opinions about the RCA fall short of what Rule 702 demands for reliability. According to Dr. Wind, in the RCA ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" (Wind Rpt. p. 60; *see also* Declaration of Kelly Ortiz, filed herewith, ("Ortiz") Ex. L at 59:8-12.) Dr. Wind reported the results of that coding as his opinion that ██████████████████████████████████████████████████████████████████████. (Wind Rpt. pp. 60-61.) Although Dr. Wind describes █████████████████████████████████████████ (Ortiz Ex. K pp. 39-40), as his deposition testimony revealed, his own involvement in designing and conducting the RCA amounted to approving what DIRECTV's lawyers handed him to rubber-stamp.

First, Dr. Wind claims that the RCA is █████████████████████████████████████████████████ (Wind Rpt. p. 60.) Yet he cannot lay a foundation that the calls analyzed in the RCA were randomly selected or statistically represent the population of DIRECTV's sales calls because he was not involved in the call selection process and knows almost nothing about it. Instead, █████████████████████████████████████████████████████████████████████ (Ortiz Ex. L at 64:20-23.) According to Dr. Wind, a ██████████████████████████████████████████████████████████████████████████████████████████████. (*Id.* at 60:20–61:25.)[2] Dr. Wind's Report, however, does not mention Mr. Ross or his declaration. (*See* Wind Rpt.) Dr. Wind ████████████████████████. (Ortiz Ex. L at 61:10-11.) Mr. Ross, whose declaration does not demonstrate any expertise in sampling, statistics, or anything else, declared "[b]ased on information and belief" that in April–May 2013, acting on counsel's request, DIRECTV asked

---

[2] DIRECTV provided the Ross declaration a day before the close of fact discovery, and never informed the FTC that it planned to use Mr. Ross's testimony as foundation for Dr. Wind's expert opinions about the RCA. When the FTC learned of Mr. Ross's foundational role for Dr. Wind's opinions and sought to depose Mr. Ross, DIRECTV refused to produce him. (*See* Declaration of Eric Edmondson, filed herewith, ("Edmondson") at ¶¶ 2-10 & Exs. C, D.)

four vendors that handled telephone sales for DIRECTV to provide it with "random samples" of call recordings; the vendors returned 633 calls; and "we" provided these calls to counsel. (Declaration of Eric Edmondson, filed herewith, Ex. C ¶ 4.) Then, in April 2015, Mr. Ross purportedly asked the vendors for more calls, which yielded "600 calls from 2015." (*Id.* ¶ 5.)

Mr. Ross's declaration does not specify the sampling methodology, or even state the underlying population that the sample is supposed to represent. Mr. Ross does not explain how 1,233 calls from four vendors for narrow snapshots of time in 2013 and 2015 are representative of the more than ███████ telesales signups that DIRECTV has reported during Complaint period. (*See* Ortiz ¶ 17 & Ex. O.)[3] He does not state whether the four vendors that provided this sample handled *all* of DIRECTV's sales calls during the relevant period.[4] Nor does he account for the obvious incentive the vendors would have to cherry-pick recorded calls for their client. Dr. Wind, for his part, ████████████████████████████████████████████ ██████████████. (Ortiz Ex. L at 64:24–65:2, 65:17-20.) Instead, ███████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ (*Id.* at 65:7-8; 66:18–67:2.)[5] He does not know ██████████████████████████████████. (*Id.* at 115:5-10.)

Dr. Wind's abdication of his expert role to DIRECTV employees, vendors, and lawyers—whom DIRECTV has shielded from expert discovery—undercuts the foundation for his opinion that the RCA sample is representative of DIRECTV's sales calls. *See Therasense*, 2008 WL 2323856, at *3 (excluding opinions of plaintiff's expert who could not provide the foundation, and where plaintiff thwarted discovery into foundation from other witnesses); *see also Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 521 (S.D.N.Y. 2009) (citing *M2 Software*, 421 F.3d at 1087) (excluding survey where the sample recruitment was not expert directed); *Colony*

---

[3] Dr. Wind ████████████████████████████████████████████. (Ortiz Ex. L at 122:7-12.) He also concedes that ████████████████████████████████████████ ████████████████████████████ (*Id.* at 112:20-25.)
When asked, Dr. Wind ██████████████████████. (Ortiz Ex. L at 62:4-7.)
[5] Although Dr. Wind testified that ██████████████████████████████████ ██████ (Ortiz Ex. L at 65:3-23), DIRECTV did not produce Mr. Friedman to testify about his foundational role for the RCA. (*See* Edmondson at ¶¶ 9, 11 & Ex. E.)

CASE NO. 15-CV-01129-HSG: FTC MOTION IN LIMINE NO. 3    3

*Holdings, Inc. v. Texaco Ref. & Mktg., Inc.*, No. SACV00217, 2001 WL 1398403, at *6 (C.D. Cal. Oct. 29, 2001) (rejecting foundation testimony from lay witness not disclosed as an expert).

The lack of proper foundation for Dr. Wind's opinions regarding the RCA extends beyond sample selection. Dr. Wind ███████████████████████████████████████. (Ortiz Ex. M at 68:9-14, 69:21–70:9 (admitting that ███████████████████████████████████████████████████████████████████).) He relied on ███████████████████████████████████████████████████████████. (*Id.* at 74:6-14, 75:8-10, 82:9–83:10; Ortiz Ex. L at 79:6-11, 81:14-18.) Counsel, namely Mr. Friedman, ███████████████████████████ ███████████████. (Ortiz Ex. L at 92:3-8.) Dr. Wind did not ███████████████. (Ortiz Ex. M at 74:23-25, 77:10-13.) He did not ███████████████████████ ███████████. (*Id.* at 84:1-4.) He did not ███████████████. (*Id.* at 74:6-14.) He could not ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. (*Id.* at 75:1-3, 75:24–76:22, 88:23–89:2; Ortiz Ex. L at 223:17–225:7.)[6] He left ███████████████████████████████ █████████████████████████████████████████████. (Ortiz Ex. L at 108:18-23.) He did not know ████████████████████████████████████████. (*Id.* at 90:4-14, 91:8-11; Ortiz Ex. M at 87:24–88:13.) He did not know ███████████ ██████████████. (Ortiz Ex. M at 82:22–83:10; 87:15-23.) In sum, his opinions about the RCA amount to an adoption of findings made by reviewers he did not select or train, through a process he did not manage, under a protocol he did not draft—all orchestrated by counsel.

**C.     Dr. Wind lacks proper foundation for the Convergys study's web control.**

Dr. Wind presents the results of a ███████████████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████. (Ortiz Ex. K p. 14; Wind Rpt. pp. 47-48 & Ex. 2; Ortiz Ex. L at 26:1–27:5.)

---

[6] Remarkably, although Dr. Wind acknowledges █████████████████████████ ████████████████████████████████████████████████████████████. (Ortiz Ex. L at 70:22–71:9, 72:7-8, 223:24–224:16, 225:13–226:1; Ortiz Ex. M at 79:3-5.)

1 ██████████████████████████████████████
2 ██████████████████████████████████████
3 ████████████████████████████████
4 ████████████████████ (Wind Rpt. p. 48) (emphasis added).[7]

Under questioning, Dr. Wind admitted that he did not ██████████; instead, ██████
██████████████████████████████████████
█████████████ (Ortiz Ex. L at 143:2-12.) Dr. Wind blindly adopted ████████
████████████████████████████. (*Id.* at 143:2–144:1,
153:23–154:5.) At the same time, Dr. Wind acknowledges that ████████████
████████████████ (Ortiz Ex. K p. 20 n.7 (quoting ████
██████████████████████████████████
████████████) (emphasis added).) He characterizes ██████████
█████████████ (*See id.* at pp. 4, 16, 25.) Indeed, he describes ████████
████████████████. (Ortiz Ex. L at 173:7-8.)[8] Yet he let
DIRECTV's lawyers select the control for him, abdicating his expert role to them.

Further undercutting foundation, DIRECTV's lawyers told Dr. Wind that ████
████████████████████████████████. (*Id.* at 143:13-
19; *see also id.* at 26:14-19; 30:2-5; 151:21–152:7; Ortiz Ex. M at 31:5-21.) That is not only
impermissible (double) hearsay, but also a Rule 408 violation. *See Apple, Inc. v. Samsung Elecs.
Co.*, No. 12-cv-00630, 2014 WL 794328, at *9 (N.D. Cal. Feb. 25, 2014). And it underscores the
inherent danger with hearsay: ████████████████████████
████████████████ (*See* Declaration of Thomas Dahdouh, filed herewith, at ¶¶ 6-7.)

In sum, lawyers directed Dr. Wind to pass off to the Court ██████████ as
a foundational fact for his expert opinion. The Court should not admit "such a rigged and biased
source of information for [a] materially important fact." *Therasense,* 2008 WL 2323856 at *2.

---

[7] The controls used in ██████████ are included as Ortiz Exhibits I and J. *See also* Declaration of Thomas Dahdouh, filed herewith, at ¶6.

[8] *See also* Ortiz Ex. L at 27:2-5, 30:19–31:1; Ortiz Ex. M at 10:20-24, 11:15-20, 14:15–15:9, 16:5-22, 18:18-22; Ortiz Ex. K p. 25.

|   |   |   |
|---|---|---|
| 1 | | Respectfully Submitted, |
| 2 | | |
| 3 | Dated: December 27, 2016 | /s/ Boris Yankilovich |

Eric D. Edmondson
Erika Wodinsky
Boris Yankilovich
Jacob A. Snow

Attorneys for Plaintiff
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
(415) 848-5100 (phone)
(415) 848-5184 (facsimile)