UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>　　　　Plaintiff,<br>　　v.<br>DIRECTV, INC., et al.,<br>　　　　Defendants. | Case No. 15-cv-01129-HSG<br><br>**ORDER RE: PRETRIAL MOTIONS AND JOINT SUBMISSION OF EXAMINATION TIME ESTIMATES FOR TRIAL WITNESSES**<br><br>Re: Dkt. Nos. 253, 323, 333, 339, 348 |

On August 14, 2017, trial will begin in this suit brought by the Federal Trade Commission ("FTC") against DIRECTV and DIRECTV, LLC (collectively, "DIRECTV"). Dkt. No. 321. Most pretrial matters have already been resolved. *See, e.g.*, Dkt. No. 289 ("MIL Order") (granting in part and denying in part motions in limine). This order addresses the remaining pretrial matters, which were heard at the most recent pretrial conference, held on August 1, 2017. *See* Dkt. No. 345 (minute entry); Dkt. No. 349 ("Hearing Tr.").

## I.   FTC'S FIRST MOTION IN LIMINE

The FTC's First Motion in Limine sought to exclude evidence regarding DIRECTV's national compliance program based on the Multistate Agreement ("MSA"), or in the alternative to compel Takehiko ("Ted") Suzuki to testify regarding the program. Dkt. No. 253.[1] On January 31, 2017, the Court denied the motion as to the evidence regarding the national compliance program. *See* MIL Order at 6 ("The Court is not convinced that DIRECTV should be broadly precluded from presenting any evidence regarding the compliance program, given that DIRECTV apparently is not planning to assert that the compliance program immunizes it from section 5 or ROSCA liability, but rather that the compliance program is relevant to its equitable defenses based upon

---

[1] An unredacted version of this motion was filed under seal at Dkt. No. 251-3.

the FTC's conduct." (internal citations and parenthetical statements omitted)). However, the Court deferred ruling on the FTC's alternative request to compel Mr. Suzuki to testify, pending further discussion with the parties. *Id.*

On August 5, 2016, Magistrate Judge Maria-Elena James denied the FTC's motion to compel Mr. Suzuki's deposition. Dkt. No. 166 at 5–8. Although Mr. Suzuki, as DIRECTV's in-house counsel, had developed and overseen DIRECTV's MSA compliance program, Judge James reasoned that a Rule 30(b)(6) designee would also possess relevant knowledge of that program. *Id.* at 5, 7. Accordingly, she allowed the FTC to depose a Rule 30(b)(6) designee instead. *Id.* at 8. At trial, the FTC seeks to present Mr. Suzuki's testimony regarding compliance issues, whereas DIRECTV seeks to present testimony on that subject through its Rule 30(b)(6) designee, Stacey Rosenson. *Compare* Dkt. No. 356 at 5 (FTC's witness list) ("If ordered to appear, Mr. Suzuki will provide testimony regarding the design and operation of DIRECTV's compliance review process for advertisements, and any basis for DIRECTV's contention that its advertisements clearly and conspicuously disclosed material terms of the offers at issue in this case.") *with* Dkt. No. 355 at 6 (DIRECTV's witness list) ("Ms. Rosenson will provide testimony regarding the policies and procedures DIRECTV uses to ensure that DIRECTV advertising complies with applicable rules, regulations, and laws.").

At the August 1, 2017 pretrial conference, the Court heard additional arguments regarding whether Mr. Suzuki should be compelled to testify. Hearing Tr. at 9:8–24:3. The Court explained that Ms. Rosenson should testify before the Court determines whether to compel Mr. Suzuki to testify. *Id.* at 23:3–4. Moreover, the Court found it necessary to defer a ruling on this issue until the trial proceedings clarify whether Mr. Suzuki can present any testimony that is not either privileged, cumulative of Ms. Rosenson's testimony, or a waste of time. *Id.* at 23:2–20. The parties agreed this approach was appropriate. *Id.* at 23:21–24:3.

## II. FTC'S ADMINSTRATIVE MOTION FOR LEAVE TO FILE A SIXTH AND SEVENTH MOTION IN LIMINE

The Court's standing order limits each party to five motions in limine. Civil Pretrial & Trial Standing Order ¶ 24. On July 11, 2017, the FTC filed an administrative motion for leave to

file a Sixth and Seventh Motion in Limine, Dkt. No. 333, and included the proposed motions in limine and exhibits in its filing, Dkt. No. 333-2 to 333-22.

The FTC's Sixth Motion in Limine "seeks to preclude Shannon Campain (former AT&T senior manager) and Clay Friedman (DIRECTV's outside counsel) from laying the foundation for DIRECTV's expert opinions at trial," and "seeks to prevent Stacey Rosenson (an AT&T Vice President), whom DIRECTV never disclosed under Rule 26, from testifying on subjects not disclosed to the FTC during discovery." Dkt. No. 333-2 at 1. The FTC's Seventh Motion in Limine "moves to prevent DIRECTV from offering 69 documents at trial that it failed to produce in discovery as required by Magistrate Judge James' Order (Dkt. 149), and that were therefore not available to the FTC's experts in preparing their reports or to the FTC in questioning DIRECTV's witnesses." Dkt. No. 333-16 at 1. In opposition, DIRECTV contends that the witnesses subject to the Sixth Motion in Limine were disclosed during discovery and will testify regarding topics that have not changed since March 2017. Dkt. No. 336 at 1–2. As to the 69 documents subject to the Seventh Motion in Limine, DIRECTV asserts they are the original print ads that consumers actually saw, were added to DIRECTV's witness list only after the FTC produced inferior copies of them, and have been available for inspection by the FTC since February 2017. *Id.* at 1–3. DIRECTV also contends that the Court can address any specific FTC objections regarding these ads during trial. *Id.* at 1.

On August 1, 2017, the Court heard arguments on the FTC's motion for leave. Hearing Tr. at 24:4–38:6. The Court **DENIED** the administrative motion for leave as to the proposed Sixth Motion in Limine, but without prejudice to the FTC raising its arguments at trial in the context of the examination of these witnesses. *Id.* at 29:15–17.

At the August 1, 2017 pretrial conference, the Court also expressed an inclination to deny the FTC's administrative motion for leave to file the Seventh Motion in Limine. *Id.* at 36:9–11. DIRECTV's counsel has submitted a sworn declaration stating that the sixty-nine circulars are the versions actually seen by consumers. Dkt. No. 336-1 ("Sandrock Decl.") ¶ 6. Using these versions will allow the Court, as the finder of fact, to best assess the advertisements. *See* Hearing Tr. at 36:21–23. And given that they are simply better quality versions of the advertisements

3

1  previously disclosed by DIRECTV and have been available for inspection by the FTC since
2  February 2017, *see* Sandrock Decl. ¶ 6, any failure to previously disclose them was harmless. *See*
3  Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th
4  Cir. 2001).

During oral argument, the FTC voiced concerns that DIRECTV will try to impugn the credibility of the FTC's experts on the ground that they reviewed not the exact versions of the circulars presented by DIRECTV at trial, but rather the previously disclosed versions. *See* Hearing Tr. at 31:7–10 (FTC's counsel: "One of our concerns is that showing them to an expert, [DIRECTV] might say, so you didn't look at the document the consumer saw, you looked at this other document. And essentially putting our experts in a position of not being able to respond to that."). The Court takes DIRECTV at its word that it does not intend to proceed in this manner. *See id.* at 34:14–18 (DIRECTV's counsel: "But this notion that somehow we are going to confront their witnesses and say, ah-hah, you know, here's this version and it's different from that version is not what we are trying to do because the print ad is the same. It's just the format in which it's being produced is different."). Therefore, the Court need not address this issue now. *See id.* at 36:17–21.

Accordingly, the administrative motion for leave is also **DENIED** as to the proposed Seventh Motion in Limine.

### III. FTC'S MOTION TO QUASH TRIAL SUBPOENAS

On July 25, 2017, the FTC filed a motion to quash the trial subpoenas issued by DIRECTV to compel live trial testimony from two FTC staff attorneys, Frank Gorman and Michael Ostheimer. Dkt. No. 339. The FTC recognized that the parties had agreed in both their initial and amended pretrial statements to "use their best efforts to bring all designated percipient witnesses to appear at trial." *Id.* at 3; *see also* Dkt. No. 275 at 24; Dkt. No. 337 at 24. However, the FTC argued that DIRECTV was seeking to elicit legal opinions from these individuals and that their sole connection to the case was serving as 30(b)(6) witnesses, such that they had no continuing obligation to appear at trial in their capacities as corporate representatives. Dkt. No. 339 at 2. Moreover, the FTC contended that Messrs. Gorman and Ostheimer were beyond the geographical

limitations of DIRECTV's trial subpoenas, such that quashing was mandatory under Federal Rule of Civil Procedure 45(d)(3)(A). *Id.*

DIRECTV filed its opposition on July 31, 2017. Dkt. No. 343. DIRECTV pointed out that the FTC must have determined that these individuals could provide admissible and relevant testimony when it included them on its own trial witness list filed on January 3, 2017. *Id.* at 3–4 (citing Dkt. No. 275-2). DIRECTV also highlighted Magistrate Judge James' finding that Mr. Ostheimer's 30(b)(6) testimony was factually relevant. *Id.* at 2, 5 (citing Dkt. No. 166 at 3:13–20); *see also* Dkt. No. 166 at 4:20–23 (allowing DIRECTV to "conduct a further three-hour deposition of [Mr. Ostheimer] regarding the factual information about the FTC's investigations and the factual support for [the FTC's] claims"). Finally, DIRECTV contended that a facial review of the proposed testimony of Messrs. Gorman and Ostheimer showed that such testimony was important and relevant. Dkt. No. 343 at 5.

On August 1, 2017, the Court heard arguments regarding the motion to quash. Hearing Tr. at 38:7–41:15. The FTC reiterated its position that these witnesses could not provide relevant factual information. *Id.* at 39:16–24. The Court **DENIED** the FTC's motion to quash because the dispute over whether these witnesses will provide relevant factual information can be resolved during trial on a question-by-question basis. *Id.* at 39:25–40:2, 40:6.[2] The FTC consequently promised to "make every effort to bring Mr. Ostheimer and Mr. Gorman to trial." *Id.* at 40:3–5. Finally, the Court cautioned DIRECTV not to seek to elicit testimony that is either privileged or states legal conclusions. *Id.* at 40:10–18. DIRECTV pledged to take this guidance seriously at trial. *See id.* at 40:19–22 ("Absolutely, your Honor. We understand the Court's prior rulings. And the testimony we put on from these witnesses will be relevant. And . . . we won't waste people's time . . . .").

### IV. DIRECTV'S MOTION FOR LEAVE TO FILE THIRD AMENDED ANSWER

The FTC filed its complaint on March 11, 2015. Dkt. No. 1 ("Compl."). DIRECTV filed

---

[2] The Court remains convinced that it would be inappropriate to find in advance that these witnesses cannot provide any non-privileged and factually relevant testimony, particularly given the FTC's decision to list them on its previous trial witness list.

5

its answer to the complaint on April 2, 2015. Dkt. No. 19. With the Court's leave, DIRECTV filed its amended answer on May 18, 2015. Dkt. No. 27. On June 1, 2015, the FTC filed its motion to strike certain affirmative defenses from DIRECTV's amended answer. Dkt. No. 32. On July 1, 2015, the Court issued a scheduling order that included an August 1, 2015 deadline to file any amended complaint. Dkt. No. 40. On December 21, 2015, the Court granted in part and denied in part the FTC's motion to strike, setting a deadline of January 18, 2016 for DIRECTV to file its second amended answer. Dkt. No. 88 at 10. On January 15, 2016, DIRECTV filed its second amended answer. Although initially set for February 6, 2017, the trial was continued to March 6, 2017, vacated in light of a settlement in principle, and then ultimately set again, this time for August 14, 2017. *See* Dkt. Nos. 294, 314–15, 321.

On June 20, 2017, less than two months before trial (and well after the originally-set trial date), DIRECTV sought leave to file a third amended answer. Dkt. No. 323. DIRECTV proposed to add affirmative defenses that (1) the FTC is not entitled to seek restitution and (2) even if it is, any such request is subject to a statute of limitations of five years:

> The FTC is not authorized to seek any restitution at all. Even if the FTC is entitled to restitution, however, the FTC's demand for restitution prior to March 11, 2010 is barred by the five year statute of limitations in 28 U.S.C. § 2462. This statute states that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. In *Kokesh v. Securities and Exchange Commission*, the United States Supreme Court held that disgorgement sought by the Securities and Exchange Commission constituted a "penalty," and was therefore subject to the five year statute of limitations. For similar reasons, the FTC's demand for restitution here is a "penalty" and "forfeiture" subject to section 2462's limit. Because the FTC did not file this suit until March 11, 2015, even if restitution is an appropriate form of relief, the FTC cannot recover restitution for the period prior to March 11, 2010.

*Id.* at 1. On June 30, 2017, the FTC filed its opposition. Dkt. No. 330. At the August 1, 2017 pretrial conference, the Court heard arguments on the motion. Hearing Tr. at 41:15–46:22.

**A.  Legal Standard**

The party seeking to amend a pleading after expiration of the deadline set by the pretrial scheduling order "must satisfy the 'good cause' standard of Federal Rule of Civil Procedure

6

16(b)(4), which provides that '[a] schedule may be modified only for good cause and with the judge's consent,' rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015). The Ninth Circuit has held that:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. . . . Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted).

### B. The *Kokesh* Opinion

Section 2462 imposes a five-year limitations period on "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture." 28 U.S.C. § 2462. In *Kokesh*, the Court held that "[d]isgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462, and so disgorgement actions must be commenced within five years of the date the claim accrues." 137 S. Ct. at 1639. The Court began from the definition of a "penalty" as "a punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws." *Id.* at 1642 (internal quotation marks and brackets omitted). From this definition, the Court articulated two principles:

> First, whether a sanction represents a penalty turns in part on whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. . . . Second, a pecuniary sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending in like manner—as opposed to compensating a victim for his loss.

*Id.* (internal quotation marks omitted). Applying this framework, the Court declared that "SEC disgorgement thus bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Id.* at 1644. Consequently, the Court held that "[t]he 5–year statute of limitations in § 2462 therefore applies when the SEC seeks disgorgement." *Id.* In a footnote, the Court explained that:

> Nothing in this opinion should be interpreted as an opinion on

7

> whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context. The sole question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period.

*Id.* at 1642 n.3.

### C. Affirmative Defense That FTC May Not Seek Restitution At All

The first line of DIRECTV's proposed amendment asserts that the "[t]he FTC is not authorized to seek any restitution at all." Dkt. No. 323 at 1. DIRECTV attempts to justify this amendment on the basis of the first sentence of footnote 3 in *Kokesh*. *Id.* at 2–3. DIRECTV also states that this affirmative defense is based upon the relevant statutory text and a disagreement with Ninth Circuit precedent:

> Section 13(b) of the FTC Act grants courts the authority to grant certain injunctions, but does not expressly authorize any other equitable relief, including restitution. Ninth Circuit precedent interprets this provision of the statute as authorizing some additional forms of equitable relief. *F.T.C. v. Commerce Planet*, 815 F.3d 593, 598 (9th Cir. 2016). Because this interpretation is contrary to the text of the statute and an incorrect statement of law, Defendants preserve the right to argue that restitution is not authorized by the FTC Act.

*Id.* at 3 n.1.

The Court finds no "good cause" for amendment under Rule 16(b) as to this affirmative defense because DIRECTV was not diligent in asserting it. *See Johnson*, 975 F.2d at 609. A fair reading of the first line of footnote 3 in *Kokesh* does not support the argument that the FTC is barred from seeking restitution: there, the Court explicitly declined to make any finding whatsoever, much less one relevant to whether the FTC has authority to seek restitution. *See* 137 S. Ct. at 1642 n.3. Moreover, the *Commerce Planet* decision was issued over a year ago, *see* 815 F.3d 593, and the FTC Act was last amended in 1994, *see* 15 U.S.C. § 53(b); FTC Act Amendments of 1994, Pub. L. 103-312, 108 Stat. 1695. Since DIRECTV has not acted diligently in waiting so long to assert this affirmative defense, the inquiry ends. *See Johnson*, 975 F.2d at 609.

### D. Affirmative Defense That Five-Year Statute of Limitations Applies to the FTC's Request for Restitution

DIRECTV seeks to extend the *Kokesh* ruling regarding the statute of limitations applicable to SEC disgorgement claims to the FTC restitution at issue here. Dkt. No. 323 at 1–2. Specifically, DIRECTV argues that application of the two principles from *Kokesh* demonstrate that FTC restitution is also a "penalty" under 28 U.S.C. § 2462. *Id.* The opposition argues that FTC restitution does not constitute a penalty under the second prong of *Kokesh* because "[t]he purpose of restitution is to compensate victims, not compensate wrongdoers." Dkt. No. 330 at 4. In support, the FTC cites a Fifth Circuit opinion distinguishing between disgorgement and restitution on the basis that the former seeks to prevent the unjust enrichment of the wrongdoer, whereas the latter seeks to compensate the victims of wrongful acts. *Id.* at 4 (citing *S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993)). The FTC also argues that "*Kokesh* itself recognizes the distinction between restitution and penalties." *Id.* at 5; *see also Kokesh*, 137 S. Ct. at 1644 (describing *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) as "distinguishing between restitution paid to an aggrieved party and penalties paid to the Government").

The Court need not resolve the "rather scholastic argument about whether restitution and disgorgement are really just about the same thing." *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186, 1192 (9th Cir. 1998) (citing cases for and against this proposition). Nor is the Court required to apply *Kokesh* to make broad generalizations regarding all requests for restitution by the FTC. Instead, the Court follows the prudent approach of courts that, in the wake of *Kokesh*, have limited their inquiry to whether the particular remedy sought operates as a penalty. *See, e.g.*, *S.E.C. v. Collyard*, 861 F.3d 760, 764 (8th Cir. 2017) ("This court need not resolve whether an injunction can be a § 2462 'penalty.' Under the facts here, the district court's injunction is not a 'penalty' . . . ."). The Court potentially could reach two conclusions regarding the character of the monetary relief requested by the FTC, and either conclusion would require denial of the motion for leave to file a third amended answer.

One one hand, the Court could agree with the FTC that the monetary relief sought here is not a penalty under *Kokesh* because it "will be used to compensate, not punish." *See* Dkt. No. 330. Whereas the proposed order in this suit provides for a monetary judgment "to provide

9

redress to eligible customers," Dkt. No. 337-1 § VIII.B, the *Kokesh* judgment ordered disgorgement, *see S.E.C. v. Kokesh*, Final Judgment, No. 1:09-cv-01021 (D.N.M. Mar. 20, 2015), Dkt. No. 185, which the *Kokesh* complaint had described as the "amount equal to the funds and benefits obtained illegally, or to which [the defendant] is otherwise not entitled, as a result of the foregoing violations," *see id.*, Compl., Dkt. No. 1 ¶ 55. Thus, the Court might find that the relief requested here would not operate as a pecuniary sanction under *Kokesh*. *See* 137 S. Ct. at 1642 ("[A] pecuniary sanction operates as a penalty *only if* it is sought for the purpose of punishment, and to deter others from offending in like manner—as opposed to compensating a victim for his loss." (emphasis added)). If the Court reached this finding, the motion for leave would be futile and therefore fail to meet even the liberal pleading standard of Rule 15(a), much less the stricter standard of Rule 16(b). *See Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009) ("Although five factors generally are considered [under Rule 15(a)] when assessing the propriety of a motion to amend, futility of amendment alone can justify the denial of a motion."); *see also Kisaka v. Univ. of S. California*, No. CV 11-01942 BRO (MANx), 2013 WL 12203018, at *2–3 (C.D. Cal. Nov. 20, 2013) (assessing motion for leave to amend under Rule 16(b) and holding that even if the Court were to find diligence and lack of prejudice, amendment would nonetheless be futile).

      In the alternative, the Court could find that the monetary relief sought is punitive. In *Commerce Planet*, the Ninth Circuit found that "[r]estitution does involve the return to the plaintiff of gains a defendant has unjustly received," and adopted a method for calculating restitution awards based upon the defendant's unjust gains, not consumer losses (even if the figures sometimes were the same). 815 F.3d at 600, 603–04. Here, the FTC's expert calculated the $3.95 billion restitution figure as "a reasonable estimate (under *Commerce Planet*) of the unjust gains DIRECTV collected from consumers." Dkt. No. 337 at 11. Thus, the Court could find that the restitution remedy here is sought to prevent the unjust enrichment of the wrongdoer, the purpose of disgorgement described in cases like *Huffman*. *See* 996 F.2d at 802. Yet even if the Court so found, and ultimately concluded that the requested remedy was a penalty under both prongs of *Kokesh*, leave to amend would still be denied because DIRECTV has not acted

10

diligently. For years, defendants in the Ninth Circuit have included a statute-of-limitations defense under 28 U.S.C. § 2462 when disgorgement is sought by the government. *See, e.g.*, *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 918 (N.D. Cal. 2008). In *Kokesh*, the defendant asserted this defense in its original answer in 2010. *See* No. 1:09-cv-01021-SMV-LAM, Dkt. No. 6 at 8 (D.N.M. Jan. 11, 2010). In 2013, the Supreme Court left open whether disgorgement was subject to § 2462, *Gabelli v. S.E.C.*, 568 U.S. 442, 447 n.1 (2013), and in 2016, the Eleventh Circuit answered that question affirmatively, *S.E.C. v. Graham*, 823 F.3d 1357, 1363 (11th Cir. 2016). Still, DIRECTV waited an entire year more before filing the instant motion. DIRECTV's motion came over ten months after the close of fact discovery in this case, Dkt. No. 159 at 4, and the FTC correctly points out that it thus never had the opportunity to make a factual record as to this statute of limitations theory (by, for example, developing facts supporting a theory of equitable estoppel). *See* Dkt. No. 330 at 3–4. Given this lack of diligence, the inquiry under Rule 16(b) ends. *See Johnson*, 975 F.2d at 609.

The Court need not decide between these two alternatives as to the underlying merits to resolve DIRECTV's administrative motion to file a third amended answer, and the motion is **DENIED.**

## V. EXAMINATION ESTIMATES FOR TRIAL WITNESSES

The parties filed an amended pretrial statement on July 18, 2017, which estimated that the trial would take approximately 85 hours, with 42.5 hours allocated to each side. Dkt. No. 337 at 49. At the pretrial conference on August 1, 2017, the Court ordered the parties to "submit a revised witness list for each side with a time estimate for each witness." Hearing Tr. at 4:2–4. The parties' joint submission of examination time estimates for trial witnesses was filed on August 4, 2017. Dkt. No. 348. The document includes examination time estimates of 42.5 hours for the FTC and 36.55 hours for DIRECTV, or 79.05 hours combined. Dkt. No. 348.[3] The parties note that they "continue to discuss whether the testimony of certain witnesses can be presented by deposition rather than live." *Id.* at 2. By way of example, the FTC has proposed submitting into

---

[3] On August 11, 2017, the parties filed form witness lists, which do not include time estimates. Dkt. Nos. 355–56.

11

evidence the testimony of five particular witnesses through designated deposition transcripts, *see id.* at 2 n.1, which the Court observes would reduce total examination time by 7.5 hours. The Court again urges the parties to focus on determining which testimony can most efficiently be presented by deposition transcript, and to be extremely efficient in their examination of witnesses. The Court will rigorously insist upon the efficient presentation of this case at trial, and the parties should understand that the overall time limit is a maximum, not a guarantee.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby defers ruling on the FTC's First Motion in Limine, **DENIES** the FTC's administrative motion for leave to file a Sixth and Seventh Motion in Limine, **DENIES** the FTC's motion to quash trial subpoenas, and **DENIES** DIRECTV's motion for leave to file a third amended answer.

**IT IS SO ORDERED.**

Dated: 8/12/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge